550 F.2d 171
 40 A.L.R.Fed. 526, 1 Fed. R. Evid. Serv. 647
 Kenneth L. VARLACK, Appellant in No. 76-1143,
v.
SWC CARIBBEAN, INC., d/b/a Orange Julius Restaurant and
Bernette Cannings, an Employee of Orange Julius
Restaurant, Appellants in No. 76-1142.
 Nos. 76-1142, 76-1143.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 7, 1976.
Decided Feb. 22, 1977.
 
 Frederick G. Watts, Roger L. Campbell, Loud & Campbell, Charlotte Amalie, St. Thomas, V. I., for appellants in No. 76-1142.
 Ronald T. Mitchell, James E. Dow, Jr., Pallme, Anduze, Mitchell & Dow, Charlotte Amalie, St. Thomas, V. I., for appellee in No. 76-1142 and appellant in No. 76-1143.
 Before SEITZ, Chief Judge, and GIBBONS and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 Defendants appeal and plaintiff Varlack cross appeals from a judgment of the district court of the Virgin Islands.
 
 
 2
 Varlack was at the time of the incident here in question employed as assistant foreman of a construction firm. Defendant Cannings was the night manager of Orange Julius Restaurant, Orange Julius being a trade name of defendant SWC Caribbean, Inc. In the pre-dawn hours of May 27, 1972, Varlack and a friend, after playing dominoes most of the evening, went to a bar, where they chanced to meet several people they knew. Soon Varlack and a couple of friends decided to go get something to eat. They first tried the Crazy Cow restaurant, but were refused entry, since it was closed. Then Varlack and his companions proceeded up the waterfront to the Orange Julius restaurant. Varlack found the front door locked, but he could see a few patrons left inside. He went around to the service entrance, but Cannings refused to let him in. The two got into a shoving match, in the course of which Cannings struck Varlack with a two-by-four which was used to bar the door. While defendants claim that Varlack only suffered one glancing blow to the head, the district court found that he was hit twice. Defendants contend that after Cannings hit him with the two-by-four Varlack left the restaurant, but saw Cannings through a window and was so enraged that he punched his right arm through the glass, whereupon a piece of the glass fell on the arm and caused a severe cut. On the other hand, plaintiff contends and the district court found that Varlack was so dazed from being hit with the two-by-four that he stumbled into the alley by the service entrance to Orange Julius and fell through the window, thereby injuring his right arm.
 
 
 3
 The injuries caused when glass fell on Varlack's arm led to amputation about eight inches below the shoulder. The district court, which was the trier of fact, found for Varlack, and awarded $27,552 for loss of past earnings, $111,275 for loss of future earnings, and $75,000 for pain, suffering, disfigurement and embarrassment. It refused to award any damages for future rehabilitative and medical expenses.
 
 I. THE APPEAL
 A.
 
 4
 Defendants have raised six allegations of error on their appeal, the first of which is that the district court erred in granting plaintiff's motion to amend the Complaint to name Cannings rather than "an 'Unknown' Employee of Orange Julius Restaurant" as a defendant, and in ruling that the amendment related back to the date on which the Complaint was filed because it satisfied the conditions of F.R.Civ.P. 15(c).
 
 
 5
 We note preliminarily that Cannings argues that he was unrepresented in the proceedings below on the motion to amend. But we think a fair reading of the record shows that the district court found that Cannings was represented by counsel for SWC Caribbean. There has been insufficient showing that this finding was in error.
 
 
 6
 While Varlack was injured on May 27, 1972 and his arm was amputated within 10 days, the Complaint captioned "an 'Unknown' Employee of Orange Julius Restaurant" was not filed until June 19, 1973. The applicable statute of limitations is two years. 5 V.I.C. § 31. On October 14, 1975 after the statute of limitations had elapsed plaintiff made the present motion to amend the Complaint. This motion was answered by "counsel for defendant Orange Julius Restaurant", who said that they had no objection to inserting Cannings' real name, but did object to relation back. The motion was again raised early on October 28, 1975, the first day of trial. The district court decided not to make its decision at that point, however. After Varlack and one other witness had testified, the court did finally hold a voir dire of Cannings on the amendment question, and concluded that the requirements of F.R.Civ.P. 15, including Rule 15(c), were satisfied.
 
 
 7
 Replacing a "John Doe" caption with a party's real name amounts to " changing a party" within the meaning of Rule 15(c), and thus will only relate back if all three conditions specified in the Rule have been satisfied. Craig v. United States, 413 F.2d 854 (9th Cir. 1969). First, the pleading as amended must relate to the same "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Plaintiff must also show "within the period provided by law for commencing the action against him, the party to be brought in by amendment . . . has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits," and that he "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."
 
 
 8
 Defendants, of course, have not contended that the Complaint as amended relates to a transaction other than the one set forth in the original Complaint. They do contend, however, that plaintiff has not satisfied the other two conditions in Rule 15(c). We may not reverse the district court's conclusion that these conditions have been met unless this conclusion is clearly erroneous. In other words, we must be "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1949). We conclude that under this standard, the district court's findings are amply supported by the evidence.
 
 
 9
 As to notice of the institution of this action, Cannings testified at trial that in "early" 1974 he saw a "paper" (a copy of the Complaint) which said "damages filed against Orange Julius and a (sic) unknown employee." While, as the district court noted, Cannings was not definite as to whether he knew of the suit before the statute of limitations expired, in late May of 1974, we find no basis for overturning the court's conclusion that since Cannings said he saw the "paper" "early" in 1974 he may be taken to have known within the requisite period of time.
 
 
 10
 The third prerequisite for relation back under Rule 15(c) is that "within the period provided by law for commencing the action against him, the party to be brought in by amendment . . . knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." Cannings testified that he knew there was a suit against "an 'Unknown' Employee of Orange Julius Restaurant." He also admitted that the phrase "Unknown Employee" referred to him, even though it didn't use his name, and that if his name had been captioned he would have been one of the persons sued. We think this testimony was manifestly a sufficient basis on which the district court could conclude that the final condition for relation back under Rule 15(c) was satisfied.
 
 B.
 
 11
 Defendants' second argument is that the court violated F.R. Evidence 615 and the constitutional guarantee of due process to the extent it sequestered defendant, Cannings and Cyril Creque, the principal officer and owner of defendant SWC Caribbean, Inc.
 
 
 12
 F.R. Evidence 615, which was applicable to this trial, provides that:
 
 
 13
 At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.
 
 
 14
 1. Early on the first day of trial, Varlack's counsel requested that the witnesses be sequestered. When the court granted this request, counsel for SWC Caribbean, Inc. asked that an exception be made for Cyril Creque, whom he described as "a former owner of the corporation." The court refused, saying that "(i)f he is going to testify to the merits of the case, he must be sequestered." After Creque had testified, the court reversed its earlier decision and allowed him to sit at the counsel's table, saying that "I did not realize you were the owner of the place."
 
 
 15
 We conclude that SWC Caribbean's reliance on Rule 615 is misplaced. Since the company is not a natural person, it cannot make use of Rule 615(1). Moreover, sequestering Creque did not violate SWC Caribbean's rights under Rule 615(2), since the description of Creque by SWC's attorney as "a former owner of the corporation" did not designate him with sufficient clarity as a corporate representative. Finally, SWC Caribbean did not demonstrate on this record that Creque's presence was "essential to the presentation of (its) cause" within the meaning of Rule 615(3). Since SWC Caribbean did not describe Creque's present status with sufficient clarity, its due process claim is also groundless.
 
 
 16
 2. The district court's failure to allow defendant Cannings to be present at the trial until he had been formally named as a party raises different considerations.
 
 
 17
 The district court was apparently of the opinion that Cannings had no right to be present under Rule 615(1) until he had been formally named as a party. On the other hand, the court also felt that it was permissible to put off ruling on the motion to amend the Complaint to formally name Cannings until Varlack and an eyewitness of the events at Orange Julius had testified. Thus, Cannings was sequestered during some of the most important testimony in the case.
 
 
 18
 We conclude that the procedure employed by the district court impermissibly nullified Cannings' important right to be present during trial; thus, the judgment of the district court as to him will be reversed, and the case remanded for a new trial as to him on all issues. Since Rule 615 requires reversal, we express no opinion on Cannings' due process argument.
 
 C.
 
 19
 The third allegation of error on the appeal is that F.R. Evidence 411 and due process required that the court declare a mistrial when Varlack's counsel asserted that defendants were insured. We find the due process claim to be without merit and proceed to address the evidentiary issue.
 
 
 20
 We conclude that the court did not commit error on this subject, since while counsel's assertions were not strictly evidence, they may be considered permissible under the standards set forth in F.R. Evidence 411:
 
 
 21
 Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.
 
 
 22
 There were two instances in which Varlack's counsel mentioned insurance before the court, which was, as we have noted, the trier of fact. First, in describing, at the court's request, his written motion to amend the Complaint, counsel said "we argued to the Court that the unknown employee, Mr. Cannings . . . had actual notice in the form of having read the Complaint and having provided a statement to the insurance carrier in connection with having read the complaint . . . finally we argued to the court that no prejudice would inure to this individual defendant if he was named in the lawsuit, for the reason that whatever defenses are available to him have been preserved, that in fact the real party in interest here has been all along the insurance carrier who has diligently investigated the case and seen to it that any evidence to support a defense has been preserved." Since these references to insurance were made in the course of arguing that the criteria of F.R.Civ.P. 15(c) were satisfied, and were not made in connection with allegations of negligence or other wrongful conduct, they do not run afoul of Rule 411.[1]
 
 
 23
 Second, in his cross-examination of Cannings, Varlack's counsel initiated the following exchange:
 
 
 24
 Q. Now, you gave a statement to the insurance company, did you not?
 
 
 25
 A. Which insurance Company?
 
 Q. Well
 
 26
 Mr. Watts (for defendants): I object, Your Honor, to the mention of insurance.
 
 
 27
 The Court: Well, the jury will kindly disregard the remark. (As noted, there was no jury in the case.)
 
 
 28
 Q. Did you not prepare a handwritten statement for some investigator, for an insurance company?
 
 
 29
 A. Yes, Sir.
 
 
 30
 Q. And you signed that statement?
 
 
 31
 A. Yes, Sir.
 
 
 32
 Cannings was then shown a copy of the statement, and recognized the signature as being his. Varlack's counsel then attempted to impeach Cannings' testimony at trial on the basis of this statement. We conclude that these references to insurance were made in the course of identifying a statement for purposes of impeachment. Consequently, they did not violate Rule 411's prohibition against admitting evidence of insurance coverage in order to show wrongdoing. We assume without deciding that the rule is applicable when the judge is the trier of fact.
 
 D.
 
 33
 Defendants' fourth allegation of error is that the district court's findings of fact were unsupported by the evidence in three respects.
 
 
 34
 First, they argue that the court erred in finding that Varlack was not intoxicated during the events at Orange Julius. However, they have not shown the court's conclusion on this score to be clearly erroneous. They say that "the hospital records and the testimony of the attending surgeon Dr. Alfred Heath made clear that plaintiff was still intoxicated when rushed to the hospital . . ." However, Varlack and one of his companions testified that during the entire evening on which the incident occurred he had at most one can of beer to drink. Moreover, the basis for the conclusion of the hospital personnel is not terribly strong. A nurse's note said that Varlack's breath had an "alcohol odor." Likewise, Dr. Heath's opinion was based on "the fact that he wasn't lucid and smelled of alcohol." But Dr. Heath admitted that, as he had used it in his notes of his examination, the word "intoxicated" may have been a "loose term to use," and that what he meant was that "(t)here was evidence that he had been drinking." Moreover, he testified that his notes did not estimate the degree of alcohol use, and that he could not now determine whether the alcohol had affected Varlack's behavior at Orange Julius. We conclude that the evidence as to intoxication was sufficiently in doubt that the court's finding may not be set aside.
 
 
 35
 Defendants next challenge the court's finding that the blows with the two-by-four were sufficient to cause Varlack to become dazed, and in this semi-conscious state, to fall through the window of Orange Julius. There was credible evidence that Varlack was struck twice on the head with a two-by- four. This is sufficient to support the challenged finding, despite some conflicting evidence. Appellants argue that the court reached its conclusion by improperly taking judicial notice of "blows on the head and their effect." Although some language in the court's opinion can be read to support this contention, we conclude that the court considered the testimony before it as sufficient to support its finding.
 
 
 36
 Finally, defendants challenge the court's finding that the window at Orange Julius was sufficiently fragile that merely stumbling into it was sufficient to break it. Contrary to their assertion, the court's conclusion on this subject did not depend on taking judicial notice of the breaking characteristics of the glass in question. Rather, the court drew an inference that glass which could break when punched could break when stumbled into. We do not find this inference to be unsupportable on the evidence.
 
 E.
 
 37
 Defendants next contend that the court committed error in that after both sides had rested, it took upon itself to delay closing argument and to comment specifically upon deficiencies in plaintiff's proof, and that it gave plaintiff a day to assemble evidence to repair the deficiencies and granted his motion to reopen the case. We must reject this contention, as defendants have made only conclusory allegations of bias, and have not demonstrated that the challenged actions were outside the court's discretion in managing the case.
 
 F.
 
 38
 Defendants' final contentions have to do with damages.
 
 
 39
 They first argue that the court erred in ruling that gross income rather than income after taxes was the correct measure of damages for loss of past and future earnings. We believe that the tax issue must be treated differently with respect to past and future earnings.
 
 
 40
 As to future earnings, we are guided by the majority rule in the United States, and by a draft of the Second Restatement of Torts especially as 1 V.I.C. § 4 states that:
 
 
 41
 The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.
 
 
 42
 While the First Restatement of Torts is silent on the taxation question, Tentative Draft # 19 of the Second Restatement, § 914A(2), which accurately formulates the majority rule in the United States, says:
 
 
 43
 The amount of an award of tort damages is ordinarily not diminished because of the fact that although the award is not itself taxed, all or a part of it is to compensate for the loss of future benefits which would have been subject to taxation.
 
 
 44
 There are sound policies in support of this position. As Judge Friendly noted in McWeeney v. New York, N.H. & H.R.R. Co., 282 F.2d 34 (2d Cir. 1960), for the trier of fact to accurately predict future income taxes, it must engage in a complex and partly hypothetical calculation. For example, it must "estimate the number of plaintiff's probable exemptions, and the dates when these will come into being." 282 F.2d 34, 37. Moreover, the trier of fact would have to take account of "rate brackets and deductions, and the treatment of other income of the plaintiff not affected by the accident"; since future earnings are discounted to present value to take account of the fact that the lump sum damage award earns interest through time, the trier of fact would also have to consider the taxability of the interest earned.[2] Id.
 
 
 45
 These considerations are not as persuasive where past earnings are concerned, and thus, the Tentative Draft of the Second Restatement, in contrast with the quoted provisions on future "benefits," takes no position with respect to past earnings. For example, where past earnings are concerned, one need not speculate about changes in the plaintiff's personal situation which might affect his tax exemptions. Since the goal in assessing compensatory tort damages is to make the plaintiff whole for losses he has actually suffered, we conclude that the award of damages for loss of past earnings must be reversed for recomputation.
 
 
 46
 Defendants' next argument is that the court erred in calculating loss of future earnings because it assumed that Varlack would be fully employed throughout his projected working life. Damages for loss of future earnings must certainly take into account the plaintiff's employment opportunities. See Restatement of Torts § 924(b). In the present case, however, we find the evidence sufficient to support the district court's conclusion that plaintiff was likely to find employment opportunities throughout his projected working life at his last working wage of $4.00 an hour. As the court noted, the owner of the construction firm for which Varlack worked testified that he was an excellent worker, and that he had been kept on even during a construction slump.
 
 
 47
 Defendants also argue that there was no evidence on which the court could justifiably choose a discount rate of 5% for reducing anticipated future earnings to present worth. Since the court was empowered to take judicial notice of the appropriate discount rate, this contention is without merit. Russell v. City of Wildwood, 428 F.2d 1176, 1183 (3d Cir. 1970).
 
 
 48
 Finally, defendants argue that the district court's award of $75,000 for pain, suffering, disfigurement and embarrassment was excessive. Since they have failed to show that this award is outside the permissible range, this contention too must be rejected. See Grunenthal v. Long Island R. Co., 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968).
 
 II. THE CROSS-APPEAL
 
 49
 We turn now to the sole issue raised by Varlack on his cross-appeal, namely, whether the district court erred in refusing to award damages for future medical and rehabilitative expenses.
 
 
 50
 The court's reasoning on this subject was as follows:
 
 
 51
 From certain testimony offered by Plaintiff it would appear that he sought an award for future medical expenses. Proof as to this, however, was somewhat vague. It does appear that Plaintiff has a defective prosthetic device but this will be replaced for him free of charge. He may, or may not, undergo additional training but the possible cost of this has not been clearly shown by the evidence. He may, or may not, undergo an operation for the possible removal of a growth at the extremity of the amputated arm, but again, no surgeon capable of performing that necessary operation estimated its cost or the attendant hospitalization. Accordingly, no specific award is made to Plaintiff for claimed damages in this area.
 
 
 52
 We conclude that under the "definite and firm conviction" standard set forth in United States v. United States Gypsum, supra, the court was clearly erroneous in finding that future rehabilitation and medical treatment is only a possibility. Moreover, we believe that the evidence adduced at trial was clearly sufficient to support a specific award.
 
 
 53
 The evidence in support of the proposition that Varlack will need rehabilitation and medical treatment is uncontradicted and substantially unimpeached. Dr. Sylvia Payne, a specialist in rehabilitative medicine who examined Varlack, said that she could state positively that he needed a new prosthetic arm, since his old one does not function properly. Indeed, the court said "I did not need the doctor to tell me, Dr. Sylvia Payne, in this case, that he was inept with that hand, because I watched him while on that stand. He does not make proper use of it, and this may be because it is ill-fitting, it may be because it's jammed, as was testified to . . . whatever reason." This, it should be noted was three years after Varlack was fitted with his present prosthesis. Dr. Payne also testified that Varlack was developing curvature of the spine (sclerosis) due to the fact that one part of his back is doing more work than the other, and that he has a "small lump" at the end of his stump which is "quite tender to touch," and which she interpreted as being a neuroma, or tumor. On this testimony, we think it was clearly erroneous to find that future rehabilitative and medical treatment is only a possibility.
 
 
 54
 The court also had before it testimony which was clearly sufficient to support a specific award of some of the costs of future rehabilitation and medical expenses, though the evidence cannot be deemed to lay a basis for estimating the likely full amount of such expenses. The court should have found, at the least, that these expenses would come to $735, the cost of the present prosthesis.
 
 
 55
 In addition to their argument that future rehabilitative and medical expenses are too speculative to be awarded, defendants have argued that they should not be awarded because they will be paid by the Virgin Islands Department of Vocational Rehabilitation.
 
 
 56
 Under Restatement of Torts § 924, Comment f, a plaintiff may not recover "for the value of services rendered gratuitously by a state-supported or other public charity." The dispute centers on whether this section of the Restatement is superseded by Tentative Draft # 19 of the Second Restatement, § 920A(2),[3] and by the weight of authority in the United States, which would allow recovery here. See Annot., 68 A.L.R.2d 876 (1959). Defendants argue that while 1 V.I.C. § 4 does look to the ALI's Restatements for rules of decision "a tentative draft (does not rise) to the same dignity as the final section as approved by the American Law Institute." But we read the statute as looking to the Restatements only as an expression of "the rules of common law"; we do not believe it contemplates strict adherence to old Restatements which no longer accurately summarize the common law. Admittedly, a Tentative Draft is not as persuasive a source of information on "the rules of common law" as is a draft which has received final approval. But we are satisfied that the weight of authority now lies behind the position in the Tentative Draft of the Second Restatement, rather than that contained in the First Restatement, which dates from 1939. Thus, Varlack may recover for future rehabilitative and medical expenses despite the fact that they are reimbursable by the Government of the Virgin Islands.
 
 
 57
 Since the court erred in concluding that future rehabilitative and medical expenses were speculative and that they may not be recovered because they are reimbursable by the Government of the Virgin Islands, we shall reverse and remand for computation of these expenses. In doing so, we wish to stress that we have not specified how the court is to weigh the testimony which bears on the probable cost of treatment other than to say that the cost will come to at least $735. We feel confident that in view of our conclusion that Varlack will need treatment, the court will reexamine the evidence already offered in proof of the costs of such treatment and make its determination on that basis.
 
 
 58
 The judgment of the district court as to Cannings will be reversed, and the case remanded for a new trial. The judgment against SWC Caribbean, Inc. will be modified to permit the district court (1) to recompute the damages for loss of past earnings after taking taxes into account, and (2) to determine the proper amount of damages for future rehabilitative and medical treatment.
 
 
 
 [1]
 We need not consider the hypothetical cases where the mention of insurance while made in good faith was in fact irrelevant to the criteria mentioned in the Rule, or where insurance was mentioned for the primary purpose of prejudicing the trier of fact
 
 
 [2]
 We note that a minority rule has emerged in some jurisdictions. See Tenore v. The Nu Car Carriers, 67 N.J. 466, 341 A.2d 613 (1975), which we followed in the diversity case of Huddell v. Levin, 537 F.2d 726 (3d Cir. 1976)
 
 
 [3]
 "Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." See Note to § 920A