ACTION ENGINEERING
v.
MARTIN MARIETTA ALUMINUM,
Appellant.
No. 81–2368.

United States Court of Appeals,
Third Circuit.

Argued Dec. 9, 1981.

Decided Feb. 11, 1982.

Rehearing and Rehearing In Banc
Denied March 17, 1982.

O'Brien & Moore, Christiansted, St. Croix, U. S. V. I., and Bruce A. Deerson (argued), Bethesda, Md., for appellant.

Robert Zimmerman, Christiansted, St. Croix, U. S. V. I., and Paul L. Waldron (argued), Hudson, Creyke, Koehler & Tacke, Washington, D. C., for appellee.

Before HUNTER, VAN DUSEN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

This appeal is taken from a judgment for the plaintiff, Action Engineering ("Action"), in a suit against Martin Marietta Aluminum ("MMA") for wrongful termination of a construction contract. The District Court of the Virgin Islands applied a "reasonableness" standard in deciding whether MMA's termination of the contract before completion was within its contractual rights to terminate "[i]f in Owner's [MMA's] opinion, contractor [Action] fails to carry on the work diligently and on schedule." Because we conclude that the district court should have applied instead a "good faith" standard to the termination of the contract, we vacate the judgment and remand for further proceedings.

### I.

In May 1976, MMA and Action entered into a written agreement for the construction of a lime storage facility at MMA's facility on St. Croix, United States Virgin Islands. As required under MMA's "General Terms and Conditions for Construction Contracts," Action promised to submit to MMA a progress schedule, and agreed that time was of the essence. Paragraph 7 of the contract provided that "[i]f in Owner's opinion, contractor fails to carry on the work diligently and on schedule ... Owner shall have the right ... to terminate this contract forthwith."

Under the original progress schedule, work was to be completed by November 1, 1976. Construction delays required a modification of this timetable, and on November 10, 1976, the parties agreed to a revised construction schedule with a completion date of December 25, 1976. On December 1, 1976, without advance notice, MMA terminated the contract and ordered Action to leave the construction site. MMA claims that its decision to terminate the contract was based on its opinion that the job could not be completed by the revised deadline.[1]

---

1. The work under Action's contract was finished by another contractor, who had been contacted before the termination of Action's contract. This replacement contractor did not begin work until January 15, 1977, and the project was not completed until the third week in February 1977.

Action brought this suit against MMA, alleging a wrongful termination of its contract.[2] In a detailed opinion, the district court considered whether MMA's termination constituted a breach of the contract. As a starting point to the court's analysis, it determined that MMA's termination must be judged under an objective standard of reasonableness. The court noted:

"The termination clause stated that if MMA was of the 'opinion' that Action was behind schedule, MMA could terminate the contract. Mere 'opinion' cannot be the basis for a termination clause, for, if it were, the contract would be illusory. Reasonableness must be read into the termination clause (see Restatement of Contracts § 265, illustration No. 4). If there was a reasonable basis for MMA's opinion that Action was behind schedule on December 1, then MMA properly terminated the contract. If there was no such reasonable basis for MMA's action, it breached the terms of the contract."

*Action Engineering v. Martin Marietta Aluminum*, Memorandum Opinion at 9 (D.V.I. Civil No. 77–00012, June 2, 1981).

The court made a careful study of the conflicting evidence regarding the extent of work completed as of December 1, 1976. Based on its evaluation of the expert witnesses' testimony, the court concluded that the job was 66% complete as of termination on December 1. Finding that 73% of the contract time under the revised schedule had elapsed by December 1, the court computed that if Action continued to work at the same pace, it would have completed roughly 89% of the contract by December 25, 1976. The court also found that if "faced with the possibility of loss of the job, the necessary effort would have been made" by Action for substantial completion of the job by the December 25 deadline. Memorandum Opinion at 10. The court concluded that since "a finding of substantial completion would have been fully warranted," *id.*, MMA unreasonably terminated the contract. The court held that MMA had breached its contract with Action and awarded damages to Action by way of restitution in the amount of $60,256.32, plus interest, costs, and attorney's fees.

MMA appealed the judgment to this court, arguing that the district court used the wrong legal standard in analyzing MMA's decision to terminate the contract. MMA claims that instead of using a reasonableness test, the district court should have considered whether MMA acted in good faith on its opinion that the contract would not be completed by December 25. Furthermore, MMA alleges that even if it is liable for breach of contract, restitution is not a proper measure of damages.

## II.

In selecting the proper standard to use in reviewing MMA's termination of the contract, we must first address the question of what law applies to this dispute. The parties argued both before the district court and in their briefs before this court that the Restatement of Contracts provides the governing law, and the district court similarly relied upon the Restatement in its opinion. The restatements of the law approved by the American Law Institute are the sources of common law in the Virgin Islands, absent local law to the contrary.[3]

At oral argument before this court, however, Action's attorney noted that paragraph 26 of the Terms and Conditions supplied by MMA as part of its contract provides: "Said contract shall be deemed to

---

2. Action also claimed that the original project specifications were altered, increasing the material costs. MMA counterclaimed for damages caused by Action's delays on the project. The District Court of the Virgin Islands rejected both these claims, and neither is before us on appeal.

3. The Virgin Islands Code provides:

"The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary."
V.I.Code Ann. tit. 1, § 4 (1967).

have been made, executed, delivered in, and shall be governed and construed in accordance with the laws of the State of California." To determine the effect of this contractual choice of law provision, we turn to the Restatement (Second) of Conflict of Laws, the Virgin Islands' conflicts law by virtue of V.I.Code Ann. tit. 1, § 4. *See* note 3 *supra.* Under the Restatement (Second), the parties' contractual choice of law prevails "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187(1) (1971). Since the parties could have specified whether the termination should be evaluated under a good faith or reasonableness standard, the Restatement (Second) permits us to apply California law, the law of the chosen state. *See id.,* Comment c, Illustration 4.

Action now argues that this court should not apply California law to the interpretation of this contract, despite the contractual choice of law provision. Given that neither party alleged that this provision determined the relevant law governing this case until the issue was raised at oral argument,[4] Action claims that neither party intended the contract to be governed by California law. Therefore, according to Action, we should apply Virgin Islands law and ignore this contractual choice of law provision as not reflecting the parties' intent.

4. Although Action's attorney raised the contractual choice of law issue during oral argument, Action's supplemental brief discussing the application of California law urges us to apply Virgin Islands law instead. Action states that its attorney only mentioned the choice of law provision to show that a "California case relied upon ... in its main brief was interpretive of the Restatement of Contracts." Appellee's Supplemental Brief at 3.

5. We note that the California Supreme Court case of *Mattei v. Hopper,* 51 Cal.2d 119, 330 P.2d 625 (1958) (en banc), discussed in part IV, *infra,* is cited in the Reporter's Note to Restatement (Second) of Contracts § 228, Comment b at 184 (1981), as illustrative of the common law governing this issue.

6. As this court stated in *Varlack v. SWC Caribbean, Inc.,* 550 F.2d 171 (3d Cir. 1977), the

Because we find that the California and Virgin Islands courts would apply similar tests in determining whether a reasonableness or good faith standard should be used here, we need not decide which body of law would apply in a different context. We may turn for guidance to the law of California, either as the substantive law chosen by the parties in the contract or as representative of the common law as expressed in the restatements approved by the American Law Institute.[5] *See American Air Filter Co., Inc. v. McNichol,* 527 F.2d 1297, 1299 n.4 (3d Cir. 1975) (when there is no conflict between the law of the forum and the law of the state identified in the contract, "we may draw upon the law of either state").

### III.

The district court decided to apply a reasonableness standard to MMA's termination of the contract, based on § 265 of the Restatement of Contracts, entitled "Promises Conditional on Promisor's Satisfaction." After the district court filed its opinion, the American Law Institute published the Restatement (Second) of Contracts, a more accurate expression of the rules of the common law as generally applied today. Therefore, we turn to § 228 of the Restatement (Second), entitled "Satisfaction of the Obligor as a Condition," which is based on § 265 of the first Restatement.[6] This new section provides:

Virgin Islands Code looks "to the Restatements only as an *expression* of 'the rules of common law'; we do not believe it contemplates strict adherence to old Restatements which no longer accurately summarize the common law." *Id.* at 180 (emphasis in original). In *Varlack,* this court applied the Tentative Draft of the Restatement (Second) of Torts in lieu of the first Restatement because "the weight of authority now lies behind the position in the Tentative Draft." *Id.* Similarly, we apply the Restatement (Second) of Contracts here in lieu of the first Restatement, as it better reflects "the rules of common law." *See also Government of Virgin Islands v. Civil,* 591 F.2d 255, 258 (3d Cir. 1979) ("As a general principle, an appellate court applies the law as it exists at the time of appeal even if different than at the time of trial.").

"When it is a condition of an obligor's duty that he be satisfied with respect to the obligee's performance or with respect to something else, and it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied, an interpretation is preferred under which the condition occurs if such a reasonable person in the position of the obligor would be satisfied."

Restatement (Second) of Contracts § 228 (1981).[7]

The district court concluded that the preferable "reasonable person" standard should be applied to the termination clause which permitted termination "if in Owner's opinion, contractor fails to carry on work diligently and on schedule." We disagree with the district court's interpretation of the contract, and conclude that MMA's termination was within its contractual rights if MMA's decision that Action would not complete the contract on time was made in good faith.[8]

 We note first that § 228 states only a preference for interpreting an ambiguous contractual provision. As Comment a to § 228 indicates, if it is clear that the contract intended to leave a decision to one party subject only to the requirement of good faith, then the courts should not imply an additional requirement of reasonableness. *See* Restatement (Second) of Contracts § 228, Comment a (1981).

Here, the contract did not use the usual terminology of "satisfaction" clauses, but instead permitted termination on the basis of MMA's "opinion." The term "opinion" implies a personal, subjective determination on the part of MMA. While opinions may be analyzed by considering whether a reasonable person might share that opinion, the term itself does not imply any objective quality.[9]

Furthermore, the Restatement (Second) of Contracts prefers an objective standard of reasonableness only when "it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied." Restatement (Second) of Contracts § 228 (1981). Here, it is not practicable to apply an objective test. By the terms of the contract, MMA was empowered to consider Action's job performance to date, determine the probability of completion by December 25, and assess the risk to the total project if Action's contract was not completed on schedule. The final judgment call of when in MMA's opinion the risk of noncompletion by the scheduled date was sufficiently great that alternate plans were necessary is a decision that is difficult to review under a reasonableness standard.

## IV.

An analysis of the contract under California law leads to the same result. The leading California case on "satisfaction" clauses is *Mattei v. Hopper*, 51 Cal.2d 119, 330 P.2d 625 (1958) (en banc). In that case, the

---

7. The first Restatement expressed the same concept in slightly different words:

 "A promise in terms conditional on the promisor's satisfaction with an agreed exchange, gives rise to no duty of immediate performance until such satisfaction; but where it is doubtful whether words mean that a promise is conditional on the promisor's personal satisfaction with an agreed exchange, or on the sufficiency of that exchange to satisfy a reasonable man in the promisor's position, the latter interpretation is adopted."

 Restatement of Contracts § 265 (1932).

8. All contracts impose on each party a duty of good faith and fair dealing. Restatement (Second) of Contracts § 205 (1981). A "satisfaction" clause does not render a contract illu-

sory, because the party who must be satisfied is always bound to act in good faith, regardless of any implied requirement of reasonableness. *See* Restatement (Second) of Contracts § 228. Comment a (1981).

9. An "opinion" has been defined as "a view, judgment, or appraisal formed in the mind about a particular matter or particular matters." *Webster's Third New International Dictionary*, 1582 (3d ed. 1961). *Webster's* further explains that the word "opinion" "implies a conclusion concerning something on which ideas may differ, not, however, excluding a careful consideration or weighing of evidence or pros and cons, but *usu[ally] stressing the subjectivity and disputability of the conclusion.*" *Id.* (emphasis added).

California Supreme Court interpreted a real estate contract that was conditioned on the purchaser's "obtaining leases satisfactory" to him. *Id.* at 121, 330 P.2d at 626. The court held that the contract was not illusory because a good faith requirement was imposed on the purchaser in deciding if the leases were satisfactory.

The California Supreme Court in *Mattei* discussed the factors to be considered in choosing between a good faith standard and a reasonableness standard. The court noted that "satisfaction" clause contracts have been divided into two categories. First, contracts that call for satisfaction as to "commercial value or quality, operative fitness, or mechanical utility," *id.* at 123, 330 P.2d at 626–27, are interpreted under a reasonableness standard. Second, contracts with satisfaction clauses that require the consideration of a "multiplicity of factors" and involve "fancy, taste, or judgment," *id.*, 330 P.2d at 627, should be analyzed under a good faith standard. Noting that on the *Mattei* facts, "the factors involved in determining whether a lease is satisfactory to the lessor are too numerous and varied to permit the application of a reasonable person standard," *id.*, the court applied the good faith test. The California court concluded, "[w]here the question is one of judgment, the promisor's determination that he

is not satisfied, when made in good faith, has been held to be a defense to an action on the contract." *Id.* [10]

Similarly, in this case, whether Action was "carry[ing] on the work diligently" was a question of judgment to be decided by MMA. This judgment involved a "multiplicity of factors," such as Action's previous job performance, its ability to increase productivity on the job site, the probable impact of the supervisory and labor problems noted by MMA, and the risk of loss caused by a delay in project completion. We conclude that, under the test of the California Supreme Court in *Mattei*, the subjective good faith standard should be applied in determining whether MMA's termination was permitted by the contract. [11]

## V.

■ In view of the contract terms, the foregoing California cases, and the other authorities mentioned above, we hold that MMA had the right to terminate the contract if, in MMA's opinion, made in good faith, Action was failing to carry on the work diligently and on schedule. The judgment, therefore, will be vacated and the case will be remanded to the district court to decide, after considering more evidence if

**10.** *See* Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv.L.Rev. 369, 383 & n.61 (1980) (distinguishing between the two types of satisfaction clauses and citing *Mattei*).

**11.** The *Mattei* test for choosing between subjective and objective standards has been used in several subsequent California cases involving satisfaction clauses. Some of these cases have been analyzed under the subjective, good faith standard. *See, e.g., Jacobs v. Freeman*, 104 Cal.App.3d 177, 190 & n.6, 163 Cal.Rptr. 680, 687 & n.6 (1980) (board of directors of vendor need only exercise good faith in deciding whether to approve a contract to sell two parcels of real estate); *Larwin-Southern Cal., Inc. v. JGB Inv.*, 101 Cal.App.3d 626, 640, 162 Cal.Rptr. 52, 59 (1979) (buyer's right to approve certain reports limited solely by a requirement of good faith), quoted favorably in *Bleecher v. Conte*, 29 Cal.3d 345, 352, 626 P.2d 1051, 1054, 173 Cal.Rptr. 278, 281 (1981) (en banc).

Other cases, including those relied on by Action, turn on the application of a reasonableness standard, but are distinguishable from the present case. *See, e.g., Guntert v. City of Stockton*, 43 Cal.App.3d 203, 212–13, 117 Cal. Rptr. 601, 607–08 (1974) (reasonableness standard applies where testimony regarding contract negotiations indicated that the parties did not intend the satisfaction clause to authorize the city council to act unreasonably in deciding whether to approve a development project, despite the contract's provision that approval was at the "sole discretion" of the city council); *Kadner v. Shields*, 20 Cal.App.3d 251, 267–68, 97 Cal.Rptr. 742, 755 (1971) (reasonableness standard applies to a satisfaction clause pertaining to approval of the terms of a deed of trust and promissory note, because "nothing of personal taste" was involved in this "matter of commercial practice and competitive action among the large financing institutions").

necessary, whether MMA terminated the contract in good faith.[12]

---

**12.** Because we remand this action on the issue of liability, we do not reach the question of the proper measure of damages. If, on remand, the district court finds that MMA breached the contract through a bad faith termination, the court may reconsider the damages issue under the terms of the Restatement (Second) of Contracts. *See, e.g.,* Restatement (Second) of Contracts §§ 378 (election among remedies), 370, 371, and 373 (availability of restitution remedy) (1981). The district court must also reconsider on remand the issue of attorney's fees, previously awarded to Action as the prevailing party under V.I. Code Ann. tit. 5, § 541(b) (1967).