**Eric CHRISTIAN, Sr., as Administrator of the Estate of James George Sewer, et al., Plaintiff,**

v.

**ALL PERSONS CLAIMING ANY RIGHT, TITLE OR INTEREST IN ALL PROPERTIES KNOWN AND DESCRIBED AS: ALL PROPERTIES KNOWN AS NEWFOUND BAY, et al., Defendants.**

No. 398/1980.

District Court, Virgin Islands,
D. St. Thomas and St. John.

April 16, 2001.

Nancy D'Anna, Law Offices of Nancy D'Anna, St. John, VI, Maria Tankenson Hodge, Hodge and Francois, PC, St. Thomas, VI, Movants.

Cedric Lewis, Doreen Williams–Lewis, St. Thomas, VI, Pro Se as Administrator for Defendant Estate of Bernard Williams.

**FINDINGS OF FACT AND CONCLU-SIONS OF LAW REGARDING MO-TION FOR APPROVAL OF SUR-VEY OF PARCEL 9D NEWFOUND BAY and DEFENDANT CEDRIC LEWIS' MOTION TO DENY MOV-ANTS' MOTION**

BROTMAN, District Judge.

**I. INTRODUCTION**

The underlying issues in this matter concern the boundaries of various parcels of property on the East End Quarter, St. John, U.S. Virgin Islands. A discussion of a case previously before this Court, which involved the same parties and related is-

sues, is set forth in *Newfound Management Corp. v. Sewer,* 885 F.Supp. 727 (D.Vi.1995), *aff'd,* 131 F.3d 108 (3d Cir. 1997) (the "1995 Opinion") and *Newfound Management Corp. v. Sewer,* 34 F.Supp.2d 305 (D.Vi.1999) (the "1999 Opinion").

Presently before the Court is Maria Tankenson Hodge ("Hodge") and Nancy D'Anna's ("D'Anna") motion to approve a survey of Parcel 9d Newfound Bay, East End Quarter, St. John, U.S. Virgin Islands ("Parcel 9d"). Movants also request attorneys fees from Cedric Lewis (Lewis) in connection with the filing of their motion. Lewis, acting pro se as Administrator for the Defendant Estate of Bernard Williams, has filed his own motion to deny the approval of the survey of Parcel 9d. On December 20, 2000, the Court held a hearing regarding these motions. After a careful review of the record, the Court enters the following findings of fact and conclusions of law.

## II. FINDINGS OF FACT

### A. CONSENT JUDGMENT

1. On June 2, 1994, the parties entered into a Consent Judgment, which represented the settlement of several parties' claims to numerous pieces of real property on the East End Quarter, St. John, U.S. Virgin Islands.

2. With respect to Parcel 9d, the Consent Judgment states:

Parcel 9d Newfound Bay, East End Quarter, St. John, Virgin Islands, consisting of 4 acres, is awarded to Defendant Irvin Sewer for the Heirs of Martin Sewer. This parcel shall be surveyed at a location on the northwestern point of Newfound Bay where it abuts Saba Bay, St. John, to the east of the old wire fence line that will be resurveyed as the boundary between Saba Bay and Newfound Bay, and the survey shall be subject to the mutual approval of the defendant, Irvin

Sewer, for the Heirs of Martin Sewer, Plaintiffs and defendant Estate of Bernard Williams, who are awarded title to portions of the surrounding Parcel 9A Newfound Bay under this judgment, prior to recording.... Nothing contained in this judgment shall be construed to adopt or endorse any position on the historical accuracy of the location of the parcel described in this paragraph, the size, location, and parcel number having been agreed upon by the parties to this litigation as a compromise of a dispute.

*See* Consent Judgment, at 5.

3. Also required under the Consent Judgment is that "[a]ny survey submitted to the Department of Planning and Natural Resources for filing pursuant to this judgment shall be accompanied by the certificate of counsel for each party whose approval of such survey is required under this judgment, certifying that such survey has been approved by the requisite parties." *See* id. at 16.

4. The Consent Judgment concludes by stating, "All parties to this action shall execute any documents or stipulations necessary to carry out the effect hereof.... The Court will maintain continuing jurisdiction to enforce the terms of this judgment." *See* id. at 17.

5. The interest in Parcel 9d was subsequently conveyed by the United States Marshal's Service to Maria Tankenson Hodge and Nancy D'Anna (collectively, "movants"), after foreclosure of their judgment lien for legal fees.

### B. THE SURVEY

6. Because the movants became the owners of Parcel 9d, they caused a survey to be done on of this parcel at their own expense. *See* Movants' Proposed Order, at ¶ 5. The survey was performed and prepared by Marvin Berning & Associates,

a surveying company owned and operated by Harry Gauriloff ("Gauriloff").

7. Gauriloff and his crew physically went into the field to do the survey.

8. Gauriloff has been a land surveyor for over fifteen years, and a surveyor in the Virgin Islands for over eight years. *See Newfound Management Corp.*, 34 F.Supp.2d at 308 (Finding of Fact ¶ 1).

9. Gauriloff had prepared the surveys of other parcels within the East End Quarter, St. John, which were the subject-matter of previous litigation before this Court in the related case *Newfound Management Corp. v. Sewer.* These surveys were approved in the Court's 1999 Opinion.

10. Gauriloff's survey of Parcel 9d was done in accordance with acceptable and proper surveying practices and follows the directives of the Consent Judgment. There is no evidence to the contrary.

11. Gauriloff's survey places Parcel 9d in conformity with the location outlined in the Consent Judgment. The size of Parcel 9d under the survey is 4.00 ±(four point zero zero, plus or minus)[1] acres, which is in conformity with the size called for under the terms of the Consent Judgment.

## C. ATTEMPTS TO OBTAIN AP-PROVAL

12. On May 12 and May 19, 2000, movants sent letters with copies of Gauriloff's survey to Irvin Sewer for the Heirs of Irvin Sewer, Cedric Lewis as Administrator of the Estate of Bernard Williams, and Karl Percell, attorney for the Plaintiffs.

13. Movants requested these parties' approval of the survey and a response within twenty (20) days.

14. Both Irvin Sewer for the Heirs of Martin Sewer and the Plaintiffs approved the survey.

15. On July 20, 2000, movants sent another letter to Lewis renewing the request for his approval of the survey of Parcel 9d.

16. Lewis did not respond to any of movants' letters.

17. The movants have no means by which to secure the recording of the survey under the Consent Judgment without the approval of the Estate of Bernard Williams. They therefore filed this present motion seeking court approval of the survey of Parcel 9d so that they may properly record it.

## D. LEWIS' OPPOSITION TO THE SURVEY OF 9D

18. In response to movants' motion, Lewis filed a Motion to Deny Movants' Motion for Approval of Survey of Parcel 9d Newfound Bay.

19. In his motion, Lewis presents several reasons why he refuses to grant his approval of the survey.

20. Lewis' first reason is that he was not notified of the survey prior to it being done. He asserts that this failure to notify was in violation of the Consent Judgment's mandate that "the survey ... be subject to the mutual approval of the defendant, Irvin Sewer for the Heirs of Martin Sewer, Plaintiffs and defendant Estate of Bernard Williams, who are awarded title to portion of the surrounding Parcel 9A Newfound Bay under this judgment, prior to recording," and that such breach of the agreement, in and of itself, entitles him to withhold his approval.

21. Lewis further argues that because land is unique, movants had an implied obligation to notify him prior to the survey. He states that "[l]and, in general, has varying features which may cause one

---

**1.** The "plus or minus" is used because the parcel is along the coastline, and thus the size of the parcel can not be measured any more

definitively. *See* Hearing on December 20, 2000, Transcript at 31.17–31.19.

part to be more valuable than the other,.... In order for the mutual-approval requirement of the Consent Judgment to be satisfied, it would have been necessary for movants or their surveyor to notify both the Administrator for the Estate of Bernard Williams, and Irvin A. Sewer (Sewer) for the Heirs of Martin Sewer ... before the start of any surveying activities." *See* id. Because the movants did not take such action, Lewis argues that the Consent Judgment was violated and that he may therefore withhold his approval.

22. Lewis contends that the Consent Judgment gives him the legal right not to approve the survey. *See* Lewis Mot., at ¶ 7.

23. In addition to not being notified prior to the survey of Parcel 9d, Lewis alleges the following rationales for not granting his approval: (i) The surveyor's precise measurement of the size of Parcel 9d, at 4.00 ±(four point zero zero, plus or minus) is mathematically impossible; *see* id. at ¶ 9; (ii) The survey does not bear the seal or signature of the surveyor and therefore does not meet the requirements of a survey; *see* id. at ¶ 10; (iii) The map of the survey makes reference to, and is apparently based on Magnetic North, in contravention of what Lewis states was a finding in the Court's 1995 Opinion; *see* id. at ¶ 11; and (iv) The surveyor did not adhere to accepted surveying practices, principles, and procedures; *see* Lewis' Resp. at 1.

24. Lewis has not presented any alternate survey of Parcel 9d.

## III. CONCLUSIONS OF LAW

25. Contract principles are generally applicable to the construction of settlement agreements. *See New York State Electric & Gas Corp. v. Federal Energy Regulatory Commission*, 875 F.2d 43, 45 (3d Cir.1989). As the Consent Judgment represents a settlement of the parties, its interpretation and enforcement are controlled by contract principles.

26. Under statute in the Virgin Islands, "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." V.I.Code Ann. Tit. 1, § 4 (2000). *See James v. Zurich–American Insurance Co.*, 203 F.3d 250, 255 (3d Cir.2000) ("[T]he ALI Restatements of the Law (thus including the Restatement (Second) of Contracts ('Restatement')) have been adopted as definitive sources of rules of decision by the Virgin Islands Legislature"); *Action Engineering v. Martin Marietta Aluminum*, 670 F.2d 456, 458 (3d Cir.1982) ("The restatements of law approved by the American Law Institute are the sources of common law in the Virgin Islands, absent local law to the contrary"). The Restatement (Second) of Contracts therefore applies to the issues at hand. *See Tourism Industries v. Hourigan*, 1995 WL 217607, *2 (Terr.V.I. March 7, 1995) (citing V.I.Code Ann. Tit. 1, § 4).

27. Here, the scope of review concerns the legality of Lewis' refusal to grant his approval of the survey of Parcel 9d. The mutual-approval provision of the Consent Judgment is similar to a contract provision which requires satisfaction of a party as a condition precedent to a duty to perform. Under the Consent Judgment, Lewis has no duty to "perform"—that is, grant approval to effectuate the proper recording of Parcel 9d—until he is, to some extent, "satisfied" with the survey.

28. Under § 228 of the Restatement (Second) of Contracts ("Restatement"), entitled "Satisfaction of the Obligor as a Con-

dition: When it is a condition of an obligor's duty that he be satisfied with respect to the obligee's performance or with respect to something else, and it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied, an interpretation is preferred under which the condition occurs if such a reasonable person in the position of the obligor would be satisfied."

■ 29. Where it is impracticable to apply the objective reasonable person standard described in § 228 of the Restatement, a party's conduct will be reviewed under a subjective standard of good faith and fair dealing. That is because all contracts impose on each party a duty of good faith and fair dealing. *See* Restatement (Second) of Contracts § 205 (1981).

■ 30. Contracts that call for satisfaction as to commercial value or quality, operative fitness, or mechanical fitness utility are interpreted under a reasonableness standard as described in § 228 of the Restatement (Second) of Contracts. *See Action Engineering,* 670 F.2d at 461 (citation omitted); *see also Mike Naughton Ford, Inc. v. Ford Motor Company,* 862 F.Supp. 264, 269 (D.Colo.1994) (citing *Brant Const. Co. v. Metropolitan Water Reclamation Dist.,* 967 F.2d 244, 247 (7th Cir.1992); *Ward v. Flex–O–Tube Co.,* 194 F.2d 500, 503 (6th Cir.1952)). Conversely, contracts with satisfaction clauses that require the consideration of a multiplicity of factors, and involve matters of fancy, taste, sensibility and judgment, are assessed under a subjective, good faith standard. *See Action Engineering,* 670 F.2d at 461 (citation omitted); *Mike Naughton Ford,* 862 F.Supp. at 269 (citations omitted).

■ 31. Where a "satisfaction" provision is ambiguous as to whether the parties intended an objective or subjective standard to apply, § 228 of the Restatement states only a preference for the ob-

jective standard when "it is practicable to determine whether a reasonable person in the position of the obligor would be satisfied." *See Action Engineering,* 670 F.2d at 460. Thus, "[p]erformance of a condition requiring satisfaction of a party may be tested for reasonableness if there is no contrary contractual intent and it is not otherwise impracticable for the court to do so." *See Aronoff v. Lenkin Co.,* 618 A.2d 669, 678 (D.C.1992). However, "if it is clear that the contract intended to leave a decision to one party subject only to the requirement of good faith, then the courts should not imply an additional requirement of reasonableness." *See id.* (citing Restatement (Second) of Contracts, Comment a).

32. Here, the Consent Judgment mandates that "the survey [of 9d] . . . be subject to the mutual approval of the defendant, Irvin Sewer for the Heirs of Martin Sewer, Plaintiffs, and defendant Estate of Bernard Williams, who are awarded title to portions of the surrounding Parcel 9A Newfound Bay under this judgment, prior to recording." *See* Consent Judgment at 5. The Consent Judgment's express terms provide no objective criteria or further guidance as to how a party's disapproval is to be reviewed or measured. The parties' intentions as to the scope of the word "approval" is thus unclear.

■ 33. Because the Consent Judgment is ambiguous as to a term of the agreement, the Court may consider reliable evidence outside the four corners of this document in order to determine the intent of the parties. *See State of N.J. v. State of N.Y.,* 1997 WL 291594, *23 (U.S. March 31, 1997); *New York State Electric & Gas Corp.,* 875 F.2d at 45 ("Where a settlement agreement is ambiguous, . . . we conclude that the Commission is entitled, and indeed required, to bring its special knowledge of the industry and in-

dustry practice to bear on resolving the ambiguity"); *see also,* Restatement (Second) of Contracts § 202 (1979).

34. The purpose of the Consent Judgment was the prompt resolution of claims, in order to avoid further lengthy and costly litigation regarding property ownership and boundary disputes. To effectuate this settlement, compromise was necessary. For example, with respect to Parcel 9d, the agreement states that the "size, location, and parcel number ... [were] agreed upon by the parties to this litigation as a compromise of a dispute." *See* Consent Judgment, at 5.

35. Allowing one party to evade the implementation of certain terms of the Consent Judgment based on his or her own subjective opinion conflicts with the spirit and purpose of the agreement.

36. The Court thus finds that the parties could not have intended that the "mutual approval" provision would provide a party limitless personal discretion to withhold approval.

37. Furthermore, here, it is practicable to apply an objective standard. The Court's 1995 Opinion contains an extensive discussion regarding proper surveying practices. *See* 885 F.Supp. at 747–757. The basic principles of good surveying practice are objective and specific: the surveyor must, among other things, perform research, collect and examine a combination of documentary, testimonial and field evidence, trace the original surveyor's footsteps (in the case of a resurvey), and make a thorough search for physical evidence. *See id.* Using these guidelines, it is not difficult to analyze whether a reasonable person would approve a survey.

38. The Court will therefore review Lewis' conduct under the objective, "reasonable person" standard, both because a subjective standard would conflict with the purpose of the agreement, and because it is practicable to do so.

39. Here, there is no evidence to suggest that Gauriloff's survey is in any way inaccurate, that it conflicts in any way with the terms of the Consent Judgment, or that Gauriloff did not adhere to proper surveying principles. Additionally, because the parcel is landlocked, there is no room for discretion in the size and location of the property. Under these circumstances, a reasonable person would grant approval of Gauriloff's survey of Parcel 9d. Lewis' refusal to grant that approval is therefore unreasonable, and amounts to a breach of his obligations under the Consent Judgment.

40. Even if a subjective "good faith and fair dealing" standard applied, the Court would still find that Lewis' refusal to approve the survey amounts to a breach of his contractual duties under the Consent Judgment.

41. "Good faith" is used in a variety of contexts, and its meaning varies somewhat with the context. *See* Restatement (Second) of Contracts § 205 Comment a. Good faith "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." *Id.; see also, Hooters of America, Inc. v. Phillips,* 173 F.3d 933, 940 (4th Cir.1999) (citing Restatement (Second) of Contracts, § 205 cmt. a.) " 'Good faith ... encompasses, among other things, an honest belief, the absence of malice ... [and] being faithful to one's duty or obligation." *See* BLACK'S LAW DICTIONARY, 693 (6th Ed.1990). "Subterfuges and evasions violate the obligations of good faith in performance even though the actor believes his

conduct to be justified." *See* Restatement (Second) of Contracts § 205 Comment d.

42. Comment d of the Restatement present examples of "bad faith" to include: the "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance." *See id.*

■■■ 43. Thus, with respect to a satisfaction clause, the subjective standard of good faith and fair dealing does not allow a party to claim dissatisfaction based on just *any* reason. A far-fetched or irrational rationale, even if honestly held, cannot satisfy the duty of good faith. Allowing such broad discretion within a contract would enable a party to freely evade his or her duty to perform, thereby creating an illusory promise.

44. As stated above, the Consent Judgment represented an economical and prompt resolution of the various parties' claims. To that end, it is a reasonable expectation of all relevant parties that the approval of a survey is not denied arbitrarily, so as to deprive another the property awarded under the agreement.

45. Here, Lewis fails to present any valid or credible basis in which to support his refusal to grant approval of the survey of 9d. The Court will review each of his reasons below:

   a. Lewis' assertion that Movants violated the Consent Judgment prior to having it surveyed is not accurate. The Consent Judgment states that the survey is subject to the mutual approval of the parties "prior to recording." Certainly, had the movants notified the other parties prior to having Parcel 9d surveyed, approval may have been more forthcoming. However, the Consent Judgment does not require such advance notification, and

the movants have therefore not violated the agreement.

   b. Lewis' contention that the uniqueness of land mandates that the movants notify him prior to the survey is also without merit. Here, there is no room for discretion in Parcel 9d's location or size. The Consent Judgment specified that "[t]his parcel shall be surveyed at a location on the northwestern point of Newfound Bay where it abuts Saba Bay, St. John, to the east of the old wire fence line that will be resurveyed as to the boundary between Saba Bay and Newfound Bay." *See* Consent Judgment, at p. 5. Insofar as Gauriloff's survey falls within these specifications, the Court finds no basis for any concerns regarding the differing value of land.

   c. If Lewis' arguments regarding the uniqueness of land are meant to dispute the accuracy of the parcel's location and size as described in the Consent Judgment, he is precluded from doing so. Under the terms of the agreement, the location and size of Parcel 9d "have been agreed upon by the parties to this litigation as a compromise of a dispute." *See* id. Therefore, Lewis has already stipulated that such issues were superseded by the description within the Consent Judgment

   d. Lewis' contention that he has a general legal right not to approve the survey is also not a meritorious basis for his actions. As stated above, every contract is subjected to an implied covenant of good faith and fair dealing. Lewis has no legal right to act in bad faith, or to thwart the very purposes of the agreement. Withholding approval of the survey without any rational basis would impede finality and the distribution of land agreed to under the terms of the Consent

Agreement, and would thus amount to bad faith.

e. Lewis' contentions that the surveys' measurement is mathematically impossible, and that Gauriloff did not adhere to accepted surveying practices, principles, or procedures, is without any basis. Gauriloff, a practiced surveyor, testified that he did adhere the proper practices and procedures. Gauriloff furthermore testified to this measurement as being the most accurate possible. Lewis has brought forth no evidence to refute that testimony, and his broad assertions, without more, cannot be accepted by the Court.

f. Lewis' argument that he is opposed to the survey because it does not bear the seal or signature of the surveyor, and therefore, does not meet the requirements of being a survey, is clearly without credence because the survey was a proposal awaiting Lewis' approval. Upon its approval, the survey would be properly signed and filed. *See* Transcript of December 20, 2000 Hearing, at 13.19–13.24.

g. Lewis assertion that this survey cannot be approved because the map makes reference to, and is apparently based on, the Magnetic North, in contravention of a finding of this Court's 1995 Opinion, mischaracterizes the Court's previous findings. In the 1995 Opinion, the Court had recognized that in order to determine proper boundaries by resurvey, a subsequent surveyor must attempt to conform his or her survey as closely as possible to the prior surveyor's work. *See Newfound Management Corp.*, 885 F.Supp. at 748. From this general rule, the Court, *inter alia,* analyzed whether a surveyor, Marvin Berning, who had performed a survey in 1988, should have relied more heavily on magnetic bearings, called

for by a surveyor named Anderson, who did the first known survey of the land in 1893. *See id.,* 885 F.Supp. at 733–37, 755. Anderson's survey was not intended to reflect the exact acreage of the relevant parcel, but to determine an agreed upon boundary. *See id.* at 733. As such, his survey used only a compass, which was a common practice when a surveyor sought only to roughly divide low-priced land. *See id.* at 733 (citation omitted). When reviewing whether Berning should have relied more heavily upon Anderson's calls for magnetic bearings, the Court stated:

[B]ased on the rough character of Anderson's survey, Berning did not need to overemphasize the significance of magnetic bearings, even though Anderson did call for bearings. Calls for magnetic bearings in old surveys present difficult problems for contemporary surveyors. Two compasses may give substantially different bearings for the same line even if the two readings are taken at the same time.... The readings vary according to the weather, topography and surrounding objects, and are subject to daily and annual declination. As years pass, it becomes necessary to control for declination and correct contemporary bearings to follow original survey lines.... Unfortunately, no one can identify how weather conditions or topographical features could have interfered with Anderson's original compass readings. The only remaining evidence of Anderson's line are the old fenceline and hardwood boundposts on the C–D segment of the G–S line. The court finds this field evidence much more compelling than Anderson's imprecise magnetic bearings that were subject to an unknown number of variables.

*See id.* at 755 (citations omitted). The Court thus decided that there was "no reason to emphasize magnetic compass readings instead of field evidence...." *See id.*

h. In its 1995 Opinion, the Court does not reject the use of magnetic bearings in surveying land. Rather, it notes their shortcomings, and emphasizes the importance to a "cumulative approach" to land surveying, which encompasses compiling "all available evidence, combining documentary, testimonial and field evidence, to trace the original surveyor's footsteps to the greatest extent possible...." *See id.* at 756. Thus, some reliance on magnetic bearings would be acceptable, as long as that reliance was not "over-emphasize[d] ... in the face of persuasive field evidence," and the surveyor additionally considered all available evidence. *See id.*

46. After analyzing Lewis' reasons for denying approval of the survey of 9d, it is evident that he fails to establish any credible, rational basis for his stance. His refusal to approve the survey appears to serve no other purpose but to deny the movants the use and enjoyment of Parcel 9d.

47. Under these circumstances, where a Consent Judgment was entered into by the parties for the purposes of arising at a prompt and economical resolution of certain claims and untangling this property from the web of further litigation, Lewis' refusal to approve the survey of 9d amounts to an evasion of the spirit of the agreement and contravenes the justified expectations of the parties. He has therefore violated the duty of good faith and fair dealing inherent in every contract.

48. The Court further finds that Lewis' actions contravened his obligations under the Consent Judgment, including the provisions related specifically to Parcel 9d and the general obligation to "execute any documents or stipulations necessary to carry out the effect [of the Consent Judgment]." *See* Consent Judgment at 17.

49. The Court will therefore grant movants' motion to approve the survey of Parcel 9d Newfound Bay.

50. While finding that Lewis violated the duty of good faith under the Restatement (Second) of Contracts § 205, the Court recognizes that Lewis is acting pro se, and does not have the benefit of an attorney to counsel him regarding his legal duties. Furthermore, the Court does not find that Lewis acted with malicious intent to breach his contractual obligations. That being so, the Court will deny movants' request for fees and costs.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant movants' motion for the approval of the survey of Parcel 9d Newfound Bay, and deny their request for attorneys fees and costs as against Lewis. The Court will approve the survey of Parcel 9d Newfound Bay, dated April 7, 2000, performed by Marvin Berning & Associates, marked Hearing Exhibit 1, and direct that it be recorded with the Office of the Public Surveyor and Cadastral Section of the Government of the Virgin Islands. Accordingly, the Court will deny Lewis' motion to deny movants' motion.

The Court will enter an appropriate order.

## ORDER REGARDING MOTION FOR APPROVAL OF SURVEY OF PARCEL 9D NEWFOUND BAY and DEFENDANT CEDRIC LEWIS' MOTION TO DENY MOVANTS' MOTION

**THIS MATTER** having come before the Court on movants' Motion for Approval of Survey of Parcel 9d Newfound Bay and

Defendant Cedric Lewis' Motion to Deny Movants' Motion for Approval of Survey of Parcel 9d Newfound Bay;

In accordance with the Findings of Fact and Conclusions of Law determined this date;

**IT IS** on this *16th* day of April 2001;

**ORDERED** that movants' motion is **GRANTED IN PART** and **DENIED IN PART**; and

**IT IS FURTHER ORDERED THAT** the portion of movants' motion seeking approval of the survey of Parcel 9d Newfound Bay is **GRANTED**, and the survey of Parcel 9d Newfound Bay, dated April 7, 2000, performed by Marvin Berning & Associates, marked Hearing Exhibit 1, is hereby **APPROVED** for recording with the office of the Public Surveyor and Cadastral Section of the Government of the Virgin Islands, and such offices are directed to accept the same for recording without any requirement of further consent or approval by any party;

**IT IS FURTHER ORDERED THAT** the portion of movants' motion requesting attorneys fees and costs as against Cedric Lewis, as Administrator for Defendant Estate of Bernard Williams is **DENIED**; and

**IT IS FURTHER ORDERED THAT** Cedric Lewis' Motion to Deny Movants' Motion for Approval of Survey of Parcel 9d Newfound Bay is **DENIED**.