**Opinions of the United States Court of Appeals for the Third Circuit**



9-21-2001

# Singletary v. PA Dept Corrections

Precedential or Non-Precedential:

Docket 00-3579

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Singletary v. PA Dept Corrections" (2001). *2001 Decisions.* Paper 216.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/216

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 21, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3579

DOROTHY SINGLETARY, individually, and as
Administrator of the Estate of Edward Singletary

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
S.C.I. ROCKVIEW INSTITUTION; JOSEPH
MAZURKIEWICZ, Superintendent of Rockview;
SEVERAL UNKNOWN CORRECTIONS OFFICERS

Dorothy Singletary, Appellant

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 99-cv-00255)
District Judge: Honorable Malcolm Muir

Argued April 16, 2001

Before: BECKER, Chief Judge, McKEE, Circuit Judges,
and POLLAK, District Judge.*

(Filed: September 21, 2001)

_____

* Honorable Louis H. Pollak, United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

WAYNE A. RODNEY, ESQUIRE
  (ARGUED)
Rodney & Associates
1616 Walnut Street
Suite 2000
Philadelphia, PA 19103

Counsel for Appellant

D. MICHAEL FISHER, ESQUIRE
Attorney General
GREGORY R. NEUHAUSER,
 ESQUIRE (ARGUED)
Senior Deputy Attorney General
CALVIN R. KOONS, ESQUIRE
Senior Deputy Attorney General
JOHN G. KNORR, III, ESQUIRE
Chief Deputy Attorney General
Chief, Appellate Litigation Section
Office of Attorney General
15th Floor Strawberry Square
Harrisburg, PA 17120

Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Judge.

This is an appeal from a grant of summary judgment for defendants Pennsylvania Department of Corrections (PADOC), State Correctional Institute at Rockview (SCI-Rockview), and former Superintendent of SCI-Rockview, Joseph Mazurkiewicz, in a 42 U.S.C. S 1983 civil rights lawsuit brought against them by Dorothy Singletary, the mother of Edward Singletary, a prisoner who committed suicide while incarcerated at Rockview. The plaintiff does not appeal from the grant of summary judgment for PADOC and SCI-Rockview. She does appeal the District Court's grant of summary judgment in favor of defendant Mazurkiewicz, but there is plainly no merit to this challenge for there is no evidence that Mazurkiewicz exhibited

deliberate indifference to Edward Singletary's medical needs.

In her original complaint, the plaintiff also included as defendants "Unknown Corrections Officers." The only chance for the plaintiff to prevail depends on her ability to succeed in: (1) amending her original complaint to add as a defendant Robert Regan, a psychologist at SCI–Rockview, against whom the plaintiff has her only potentially viable case; and (2) having this amended complaint relate back to her original complaint under Federal Rule of Civil Procedure 15(c)(3) so that she overcomes the defense of the statute of limitations. Rule 15(c)(3) provides for the "relation back" of amended complaints that add or change parties if certain conditions are met, in which case the amended complaint is treated, for statute of limitations purposes, as if it had been filed at the time of the original complaint.

The District Court denied the plaintiff 's motion for leave to amend because it concluded that the amended complaint would not meet the conditions required for relation back under 15(c)(3). Rule 15(c)(3) has two basic parts, both of which must be met before relation back is permitted. First, 15(c)(3)(A) requires that the party that the plaintiff seeks to add has received, within a certain time period, sufficient notice of the institution of the action that the party is not prejudiced. In addition to actual notice (which is not claimed here) Rule 15(c)(3)(A) cognizes two means of imputing the notice received by the original defendants to the party sought to be added: (i) the existence of a shared attorney between the original and proposed new defendant; and (ii) an identity of interest between these two parties. Second, 15(c)(3)(B) requires that the party sought to be added knew or should have known that, but for a mistake, the plaintiff would have named him in the original complaint.

We conclude that the District Court was correct in ruling that the amended complaint did not meet the notice requirements of Rule 15(c)(3)(A). The plaintiff cannot avail herself of the "shared attorney" method of imputing notice to Regan because the defendants' attorney was not assigned to this case until after the relevant notice period under Rule 15(c)(3). Furthermore, the "identity of interest"

3

method is not open to the plaintiff because Regan was not high enough in the administrative hierarchy of SCI-Rockview to share sufficient interests with any of the original defendants.

The District Court also found that the plaintiff did not meet the requirement of Rule 15(c)(3)(B)--that Regan knew (or should have known) that, but for a mistake, the plaintiff would have named him in the original complaint. The correct legal interpretation of 15(c)(3)(B) is not settled, and it is unclear whether the plaintiff 's original complaint, which included as defendants "Unknown Corrections Officers," meets 15(c)(3)(B)'s mistake requirement. More precisely, because the plaintiff simply did not know of Regan's identity, it is an open question whether failure to include him originally as a defendant was a "mistake" under Rule 15(c)(3)(B). Resolution of the question whether lack of knowledge can constitute a mistake is important in civil rights cases. For example, a person who was subjected to excessive force by police officers might not have seen the officers' name tags, and hence would likely need discovery to determine the names of his attackers, although he cannot get discovery until he files his S 1983 complaint. If this person were prevented from having his complaint relate back when he sought to replace a "John Doe" or "Unknown Police Officers" in his complaint with the real names of his assailants, then he would have to file his complaint substantially before the running of the statute of limitations on his claim in order to avoid having his claim end up being barred. This would render the S 1983 statute of limitations much shorter for this person than it would be for another complainant who knows his assailants' names.

Although there seems to be no good reason for the Rules of Civil Procedure to treat two such similarly-situated plaintiffs so differently, in most Courts of Appeals the naming of "unknown persons" or "John Does" (the functional pleading equivalent of "unknown persons") as defendants in an original complaint does not meet 15(c)(3)(B)'s mistake requirement. In our one case to consider the issue this Court implied (though we did not squarely hold) that such "John Doe complaints"1 do meet

_____

1. For simplicity's sake, for the rest of this opinion we will refer to complaints that list as defendants "John Does," "Unknown Persons," or their functional equivalents as "John Doe complaints."

4

this mistake requirement. But even if the mistake requirement is met in this case, it is not at all clear that Regan knew or should have known that the original complaint would have included him since the complaint named "Unknown Corrections Officers," and Regan is a staff psychologist, not a corrections officer, at SCI-Rockview.

It is clear that the plaintiff does not meet Rule 15(c)(3)(A)'s notice requirement, and hence we need not decide the thorny issues outlined in the preceding two paragraphs. However, because the position taken by the other Courts of Appeals on Rule 15(c)(3)(B)'s "mistake" requirement would seem to lead to seriously inequitable outcomes, we suggest to the Judicial Conference Advisory Committee on Civil Rules that it amend the language of Rule 15(c)(3)(B) so as to clearly provide that the requirements of that section of the Rule can be met in situations in which the plaintiff seeks to replace a"John Doe" or "Unknown Person" with the name of a real defendant. As we further explain infra at note 5, such an amendment, which is supported by the weight of scholarly commentary, would make Rule 15(c)(3) fit more closely with the overall tenor and policy of the Federal Rules of Civil Procedure.

I.

Edward Singletary was serving a 6-12 year sentence at SCI-Rockview for his conviction of rape. In November 1995, Singletary was transferred to the maximum security restricted housing unit (MSRHU) of SCI-Rockview as a result of "threatening an employee or family with bodily harm." Over the next ten months, Singletary became increasingly agitated, acting hostilely to the staff and accusing them of tampering with his food and mail. During this period, Singletary was given chances to leave the MSRHU and re-enter the general population unit of SCI-Rockview, but he refused each time.

During his stay in the MSRHU, Singletary was seen weekly by a counselor, monthly by a three-person Program Review Committee, and by medical and psychological staff

5

as needed. A staff psychiatrist, Dr. Abdollah Nabavi, prescribed an anti-depressant to help Singletary with his sleeplessness and anxiety. Nabavi also offered Singletary Trilafon, an anti-psychotic drug, because he "felt [Singletary] was agitated, he was over suspicious, he was just very uncomfortable in the environment. . . . I think he was [psychotic]. If he was not, he was very close to being psychotic." Dep. of Dr. Nabavi at 31-32. Singletary, however, refused the Trilafon.

On October 3, 1996, Singletary became agitated when he was told to remove some magazines that had accumulated in his cell, and he threatened a prison officer. Because of the threat, the next day Singletary was transferred to a cell in the "Deputy Warden" (DW) building with the approval of the prison Superintendent, defendant Joseph Mazurkiewicz. After placement in a DW cell, Singletary was seen on October 4, 1996 by Kevin Burke, a psychiatrist consultant for SCI-Rockview, and by Robert Regan, a psychological services staff member and the person whom Dorothy Singletary seeks to add as a defendant. Regan was working as a "psychological service specialist" at SCI-Rockview at this time; his duties included the psychological testing and assessment of inmates, parole evaluations, group therapy, mental health intervention, and suicide risk evaluation and prevention. Regan did not have any administrative or supervisory duties at the prison. Beginning in late 1994, Regan had met with and evaluated Singletary on a weekly basis.

In their meetings with Singletary on October 4, Regan and Burke talked separately with him to assess his mental state. Singletary vehemently denied to both of them at that time that he was suicidal. On the basis of these examinations, neither Regan nor Burke saw any reason to take further precautions for Singletary. Just after midnight on October 6, 1996, Singletary committed suicide by hanging himself with a bedsheet.

On October 6, 1998, Dorothy Singletary filed in the District Court for the Eastern District of Pennsylvania a S 1983 deliberate indifference lawsuit alleging cruel and unusual punishment in violation of the Eighth Amendment along with pendent state law claims for wrongful death.

6

Named as defendants were PADOC, SCI-Rockview, Mazurkiewicz, and "Unknown Corrections Officers." The action was ordered transferred to the Middle District of Pennsylvania on January 12, 1999 to correct a venue deficiency, and that order and the original file were officially docketed by the Middle District on February 16, 1999. On April 16, 1999, PADOC and SCI-Rockview moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and on May 28, 1999, the District Court granted this motion in part by dismissing Singletary's S 1983 claims against these defendants on Eleventh Amendment grounds, but denied their motion to dismiss the pendent state claims on sovereign immunity grounds.

The parties then conducted discovery, and on June 23, 2000, the defendants moved for summary judgment. On July 28, 2000, about a week after filing her response to the summary judgment motion, the plaintiff moved to amend her complaint to add Regan as a defendant. In two orders dated September 20, 2000, the District Court: (1) denied the plaintiff leave to amend her complaint to add Regan as a defendant on the grounds that that claim would be barred by the statute of limitations because it did not meet the conditions for relation back in Federal Rule of Civil Procedure 15(c)(3); (2) granted summary judgment for defendant Mazurkiewicz on the deliberate indifference claim on the basis that the plaintiff had not presented any evidence of what Mazurkiewicz knew or should have known about Edward Singletary; (3) granted summary judgment for defendants PADOC and SCI-Rockview on the plaintiff 's pendent state law claims because they were barred by the Eleventh Amendment; and (4) dismissed the remaining state law claims without prejudice because there were no federal law claims remaining in the lawsuit. This appeal followed.

II.

We find the plaintiff 's assertion that the District Court erred in granting summary judgment to defendant Mazurkiewicz to be clearly lacking in merit and dispose of it in the margin.2 We thus turn to Singletary's contention

_____

2. The District Court granted summary judgment for Mazurkiewicz because it found that the plaintiff had not presented any evidence that

7

that the court erred by not granting her leave to amend her complaint to add Regan as a defendant. We review a district court's decision granting or denying leave to amend a

_____

tended to show that Mazurkiewicz had been deliberately indifferent to Edward Singletary's medical needs as that concept has been developed in Supreme Court and Third Circuit case law. Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, "the burden on the moving party may be discharged by `showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case" when the nonmoving party bears the ultimate burden of proof. Celotex, 477 U.S. at 325.

The general standard for a S 1983 deliberate indifference claim made against a prison official is set forth in Farmer v. Brennan, 511 U.S. 825 (1994), which focuses on what the official actually knew: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. In the context of a deliberate indifference claim based on failure to provide adequate medical treatment, "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute `deliberate indifference.' " Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

The plaintiff 's basic argument on deliberate indifference is that Mazurkiewicz authorized Edward Singletary's transfer to a disciplinary cell instead of a medical facility with deliberate indifference to his medical/psychological needs. The only evidence the plaintiff presents in support of this is a report by Faith Liebman, a"Forensic Sexologist and Criminologist," which states that Edward Singletary was exhibiting various suicidal symptoms and then conclusorily opines that "the Department of Corrections exhibited a deliberate indifference to the needs of Mr. Singletary by ignoring these symptoms." Nowhere does the report address what Mazurkiewicz knew or must have known, and the plaintiff 's brief does not address this either.

The plaintiff would have the burden of proving at trial that Mazurkiewicz was deliberately indifferent to the excessive risk to her son, which, as Farmer instructs us, would involve showing that Mazurkiewicz knew or was aware of that risk. The defendants contend that the record

8

complaint for abuse of discretion. See Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 457 (3d Cir. 1996). However, if we are reviewing the factual conclusions that a district court made while considering the Rule 15 motion, our standard of review is clear error. See Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 174 (3d Cir. 1977). Furthermore, if the district court's decision regarding a Rule 15(c) motion was based on the court's interpretation of the Federal Rules of Civil Procedure, our review is plenary. See Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1177 (3d Cir. 1994).

A. Rule 15(c)(3)

The parties agree that the statute of limitations for this action is two years, which expired on October 6, 1998, the day that Singletary filed her original complaint. The plaintiff then moved to amend her complaint by adding Regan as a defendant on July 28, 2000, almost two years after the statute of limitations had run. The plaintiff argues that this proposed amendment did not violate the statute of limitations because the amendment would relate back to the original, timely filed complaint under Federal Rule of Civil Procedure 15(c)(3). Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint. See Nelson v. County of Allegheny, 60 F.3d 1010, 1015 (3d Cir. 1995). Rule 15(c) provides:

> (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when

_____

is lacking any evidence to support that claim, and in fact, the plaintiff does not dispute that contention. Instead, she argues that the burden is on the defendants to show the lack of a genuine issue of material fact as to Mazurkiewicz's deliberate indifference. This assertion, however, is clearly contrary to the Supreme Court jurisprudence on summary judgment as we outlined above; in order to survive a summary judgment motion in which the movant argues that there is an absence of evidence to support her case, the plaintiff must point to some evidence beyond her raw claim that Mazurkiewicz was deliberately indifferent. See Celotex, 477 U.S. at 325. Because she failed to do that, the District Court was correct to grant summary judgment for Mazurkiewicz.

> (1) relation back is permitted by the law that
> provides the statute of limitations applicable to
> the action, or
>
> (2) the claim or defense asserted in the amended
> pleading arose out of the conduct, transaction,
> or occurrence set forth or attempted to be set
> forth in the original pleading, or
>
> (3) the amendment changes the party or the
> naming of the party against whom a claim is
> asserted if the foregoing provision (2) is satisfied
> and, within the period provided by Rule 4(m) for
> service of the summons and complaint, the
> party to be brought in by amendment (A) has
> received such notice of the institution of the
> action that the party will not be prejudiced in
> maintaining a defense on the merits, and (B)
> knew or should have known that, but for a
> mistake concerning the identity of the proper
> party, the action would have been brought
> against the party.

Fed. R. Civ. P. 15(c).

The issue in the case is whether the plaintiff can use 15(c)(3) to have her amended complaint substituting Regan as a defendant in place of "Unknown Corrections Officers" relate back to her original complaint. The Rule is written in the conjunctive, and courts interpret 15(c)(3) as imposing three conditions, all of which must be met for a successful relation back of an amended complaint that seeks to substitute newly named defendants. See Urrutia , 91 F.3d at 457. The parties do not dispute that the first condition-- that the claim against the newly named defendants must have arisen "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading"--is met. The second and third conditions are set out in 15(c)(3)(A) & (B), respectively, and must be met "within the period provided by Rule 4(m) for service of the summons and complaint," Fed. R. Civ. P. 15(c)(3), which is "120 days after the filing of the complaint," Fed. R. Civ. P. 4(m). The second condition is that the newly named party must have "received such notice of the institution of the

10

action [within the 120 day period] that the party will not be prejudiced in maintaining a defense on the merits." Fed. R. Civ. P. 15(c)(3)(A). Urrutia states that this condition "has two requirements, notice and the absence of prejudice, each of which must be satisfied." 91 F.3d at 458. The third condition is that the newly named party must have known, or should have known, (again, within the 120 day period) that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place. Fed. R. Civ. P. 15(c)(3)(B).

Under these facts, we are concerned with three issues: (1) did Regan receive notice of the institution of the action before February 3, 2000 (which is 120 days after the complaint was filed); (2) was the notice that Regan received sufficient that he was not prejudiced in maintaining his defense; and (3) did Regan know (or should he have known) by February 3, 2000 that but for a mistake Singletary would have named him as a party in the original complaint? As explained above, the answers to all of these questions must be "Yes" for Singletary to prevail on her Rule 15(c)(3) argument. The District Court concluded that Regan did not receive any notice of the litigation or of his role in that litigation during the 120 day period. The court also concluded that Regan would be unfairly prejudiced by having to mount his defense at this late date, and that he neither knew nor should have known that, but for a mistake, he would have been named in the original complaint.

Notice is the main issue, and we will address that first. For reasons that we set forth in the margin, the unfair prejudice issue is closely dependent on the outcome of our notice inquiry; because we agree with the District Court that Regan did not receive notice within the 120 day period (and because the District Court based its decision on notice and mentioned prejudice only in passing), we will not address prejudice.3
_____

3. Prejudice and notice are closely intertwined in the context of Rule 15(c)(3), as the amount of prejudice a defendant suffers under 15(c)(3) is a direct effect of the type of notice he receives. See 6A Charles A. Wright

11

B. Notice

This court has seldom spoken on the meaning of "notice" in the context of Rule 15(c)(3). Still, we can glean some

_____

et al., Federal Practice And Procedure S 1498, at 123 (2d ed. 1990) ("A finding that notice, although informal, is sufficient . . . frequently [depends] upon determining whether the party to be added would be prejudiced by allowing relation back under the circumstances of the particular case."). That is, once it is established that the newly named defendant received some sort of notice within the relevant time period, the issue becomes whether that notice was sufficient to allay any prejudice the defendant might have suffered by not being named in the original complaint.

If the newly named defendant received no notice, then it would appear unlikely that such non-notice was sufficient to allay the prejudice. We recognize that it is at least arguable that it is conceptually possible for a newly named defendant to have received no notice and yet not be prejudiced. But, since Rule 15(c)(3) does not appear to contemplate such a scenario, we will not undertake to express an opinion on that question.

If Regan had received notice of the institution of this action within the 120 day period, his failure to prepare a defense could be construed as "careless or myopic," so he would not be legitimately prejudiced because his "alleged prejudice results from his own superficial investigatory practices or poor preparation of a defense." Id. S 1498, at 126. The District Court, however, based its prejudice analysis on the premise that Regan received no such notice:

> Singletary seeks $10,000,000 in various damages from the Defendants. The underlying events occurred more than 4 years ago and the trial is scheduled to commence in a very short time. Subjecting Regan to such potential liability for the first time at this late date on the eve of trial and requiring him to "set about assembling evidence and constructing a defense when the case is already stale," Nelson, 60 F.3d at 1015, would unfairly prejudice him.

Dist. Ct. Order #1, Sept. 20, 2000, at 11-12. Of course, if Regan had received notice earlier, he could have prepared his defense when the case was not so stale. We agree with the District Court that Regan did not receive any notice within the requisite time period, and we also agree that Regan would suffer prejudice by being forced to prepare his defense at this point. We have noted above that, arguably, a non-notice non-prejudice scenario is a conceptual possibility; but this case does not present such a situation.

general instruction from the few cases that address the issue. First, Rule 15(c)(3) notice does not require actual service of process on the party sought to be added; notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means. See Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 175 (3d Cir. 1977) (holding that a person who the plaintiff sought to add as a defendant had adequate notice under 15(c)(3) when, within the relevant period, the person by happenstance saw a copy of the complaint naming both the place where he worked and an "unknown employee" as a defendant, which he knew referred to him); see also Berndt v. Tennessee , 796 F.2d 879, 884 (6th Cir. 1986) (notice need not be formal); Eakins v. Reed, 710 F.2d 184, 187–88 (4th Cir. 1983) (same); Kirk v. Cronvich, 629 F.2d 404, 407–08 (5th Cir. 1980) (same). At the same time, the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action. See Bechtel v. Robinson, 886 F.2d 644, 652 n.12 (3d Cir. 1989).

The plaintiff does not argue that Regan received formal or even actual notice within the 120 day period; instead, she contends that Regan received "constructive or implied notice" of the institution of the action. She cites to several district court cases within this Circuit for the proposition that "notice concerning the institution of an action may be actual, constructive, or imputed." Id. (citing Keitt v. Doe, 1994 WL 385333 at *4 (E.D. Pa. July 22, 1994); Heinly v. Queen, 146 F.R.D. 102, 107 (E.D. Pa. 1993); Kinnally v. Bell of Pennsylvania, 748 F. Supp. 1136, 1141 (E.D. Pa.1990)). The plaintiff then advances two methods of imputing notice to Regan that she argues are implicated here: (1) the shared attorney method (Regan received timely notice because he shared his attorney with SCI–Rockview, an originally named party); and (2) the identity of interest method (Regan received timely notice because he had an identity of interest with SCI–Rockview). The central question before us is whether the facts of this case support the application of one or the other of these forms of notice.

13

## 1. Notice via Sharing an Attorney with an Original Defendant

The "shared attorney" method of imputing Rule 15(c)(3) notice is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action. This method has been accepted by other Courts of Appeals and by district courts within this Circuit. See Gleason v. McBride, 869 F.2d 688, 693 (2d Cir. 1989); Barkins v. Int'l Inns, Inc., 825 F.2d 905, 907 (5th Cir. 1987); Berndt v. State of Tennessee , 796 F.2d 879, 884 (6th Cir. 1986); Heinly, 146 F.R.D. at 107; Kinnally, 748 F. Supp. at 1141. We endorse this method of imputing notice under Rule 15(c)(3).

The relevant inquiry under this method is whether notice of the institution of this action can be imputed to Regan within the relevant 120 day period, i.e., by February 3, 1999, by virtue of representation Regan shared with a defendant originally named in the lawsuit. The plaintiff contends that Regan shared an attorney with all of the originally named defendants; more precisely, she submits that appellees' attorney, Deputy (State) Attorney General Gregory R. Neuhauser, entered an appearance as "Counsel for Defendants" in the original lawsuit, and hence that Neuhauser represented the "several Unknown Corrections Officers" defendants, one of whom turned out to be Regan. The plaintiff submits that Neuhauser's investigation for this lawsuit must have included interviewing Regan (as he was one of the last counselors to evaluate Edward Singletary's mental state), so that Regan would have gotten notice of the institution of the lawsuit at that time.

The plaintiff notes further that Neuhauser responded to all of the allegations in the complaint including those governing the unknown corrections officers; that Neuhauser defended at Regan's deposition; and that nothing in Neuhauser's Answer to the Complaint was inconsistent with jointly representing employees like Regan. The defendants counter that, even if Regan were made a defendant in this suit, Regan would not have to accept Neuhauser as his counsel: Pennsylvania law specifically

14

allows state employees to engage their own counsel when sued for actions taken in the course of their employment. See 4 Pa. Code S 39.13(a)(3) (2001).

The plaintiff 's contentions raise an interesting issue: whether an attorney's original entry of appearance as "Counsel for Defendants" can be used to establish, at the time of that appearance, a sufficient relationship for Rule 15(c)(3) notice purposes with a party who is later substituted as a defendant for a "John Doe" (or its functional equivalent) named in the original complaint. Because we are concerned with the notice that the newly named defendant received, the fundamental issue here is whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, within the 120 day period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant.

In this case, however, the record is clear that Neuhauser did not become the attorney for the defendants until well after the relevant 120 day period had run. The plaintiff originally filed this action in the Eastern District of Pennsylvania on October 6, 1998. The action was then transferred to the Middle District of Pennsylvania; the order directing the clerk to transfer the case was entered on January 12, 1999, and that order and the original file were docketed by the Middle District on February 16, 1999. Neuhauser was substituted as counsel for the defendants on February 24, 1999, replacing John O.J. Shellenberger. The relevant 120 day period ended on February 3, 1999, so any representation and investigation (and contact with Regan) by Neuhauser did not begin until at least three weeks after the 120 day period ended.

Therefore, even if we were to conclude that Neuhauser in some sense represented and thereby gave notice to Regan before Regan was sought to be named as a defendant, this does not help the plaintiff because Neuhauser's representation of the defendants commenced after the 120 day period. Furthermore, the plaintiff has not made a "shared attorney" argument regarding the original attorney Shellenberger (the defendants' attorney of record during the 120 day period), but even if she did, Shellenberger has not

15

represented, and will never represent, Regan at any point in this action. Because this case was quickly transferred to the Middle District, the record does not support the inference that any investigation of the case was performed that would have given Regan notice within the 120 days; that is, there is no evidence in the record that Shellenberger contacted Regan about this case or had any relationship with Regan at all. For these reasons, we reject the plaintiff 's argument that Regan obtained sufficient Rule 15(c)(3) notice via the "shared attorney" method of imputing notice.

2. Notice via an Identity of Interest with an Originally named Defendant

The "identity of interest" method of imputing Rule 15(c)(3) notice to a newly named party is closely related to the shared attorney method. Identity of interest is explained by one commentator as follows: "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." 6A Charles A. Wright et al., Federal Practice And Procedure S 1499, at 146 (2d ed. 1990). One could view the shared attorney method as simply a special case of, or as providing evidence for, the identity of interest method, in that sharing an attorney with an originally named party demonstrates that you share an identity of interest with that party. See, e.g., Jacobsen v. Osborne, 133 F.3d 315, 320 (5th Cir. 1998) (using the fact that the parties shared an attorney as evidence that the identity of interest test was met). But cf. 3 James Wm. Moore, Moore's Federal Practice S 15.19[3][c], at 15–88 to 15–89 (3d ed. 2001) ("Legal counsel shared by the original and new defendants is not sufficient to establish an identity of interest." (citing In re Integrated Res. Real Estate Ltd. P'ship Sec. Litig., 815 F. Supp. 620, 645 (S.D.N.Y. 1993))). However, because the parties and various district court cases within this Circuit treat identity of interest and shared attorney as separate methods of imputing Rule 15(c)(3) notice, we will do likewise. See, e.g. , Keitt v. Doe, 1994 WL 385333 (E.D. Pa. July 22, 1994).

16

In Schiavone v. Fortune, 477 U.S. 21 (1986), the Supreme Court seemingly endorsed the identity of interest method of imputing notice for Rule 15(c)(3): "Timely filing of a complaint, and notice within the limitations period to the party named in the complaint, permit imputation of notice to a subsequently named and sufficiently related party." Id. at 29. District courts within this Circuit have interpreted this passage to mean that the Supreme Court has accepted the identity of interest notice method, see, e.g., Keitt 1994 WL 385333 at *4, and we find this reading of Schiavone plausible. At all events, we adopt it as a logical construction of the Rule. Thus, the relevant issue is whether Regan has a sufficient identity of interest with an originally named defendant to impute the notice that defendant received to Regan.

The plaintiff does not substantially develop her identity of interest argument (she concentrates mainly on the shared attorney method of imputing notice), but she does advance the argument that Regan shared an identity of interest with SCI-Rockview because he was employed by SCI-Rockview. The question before us is therefore whether an employee in Regan's position (staff psychologist) is so closely related to his employer for the purposes of this type of litigation that these two parties have a sufficient identity of interest so that the institution of litigation against the employer serves to provide notice of the litigation to the employee. See 6A Wright et al., supra, S 1499 at 146.

There is not a clear answer to this question in the case law. The parties do not cite, and we have not found, any Third Circuit case that addresses this issue. We have found, however, two cases from other Circuits and one district court case from within this Circuit that shed some light on this topic. In Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8 (1st Cir. 1990), the plaintiff, a prisoner in Puerto Rico, brought a S 1983 lawsuit alleging that a prison guard violated his civil rights by standing idly by as the plaintiff was stabbed seven times by other inmates in the Intensive Treatment Unit of the prison. The original complaint was filed pro se, and named as defendants the superintendent of the prison and the head administrator of the Puerto Rican prison system. The District Court allowed

17

the plaintiff 's amended complaint, which added the prison guard as a defendant, to relate back to the original complaint under Rule 15(c)(3), on the grounds that the identity of interest that the prison guard shared with the prison officials named in the original complaint meant that the notice given to the latter could be imputed to the former.

The First Circuit held that the district court did not err in imputing notice to the prison guard based on the identity of interest he shared with the originally named prison officials. In finding this identity of interest, the Court of Appeals focused on the facts that the originally named defendants were the prison guard's superiors, the prison guard was present at the attack, and the guard continued to work in the Intensive Treatment Unit where the plaintiff remained as an inmate, subject to special protective measures (so the guard and the prisoner would likely have had further contact). Under these facts, the court held that "it is entirely reasonable to assume that [the prison guard] was notified or knew of the lawsuit commenced by[the prisoner] as a result of the assault." Id . at 13.

In Jacobsen v. Osborne, 133 F.3d 315 (5th Cir. 1998), the plaintiff brought a S 1983 action against a named officer (Osborne) and several unnamed officers, along with state tort claims against the City of New Orleans and the Sheriff. The plaintiff sought to have his amended complaint replacing Osborne with the previously unnamed other officers relate back under Rule 15(c)(3). The Fifth Circuit held that the newly named defendants received constructive notice because there was a sufficient identity of interest between the newly named officers, Officer Osborne, and the City to infer notice. The court based this conclusion on the fact that "the City Attorney, who represented the original City defendants (the City and Officer Osborne) . . . would necessarily have represented the newly-named officers. The City Attorney answered the complaint on behalf of the City and Officer Osborne and, to do so, presumably investigated the allegations, thus giving the newly-named officers the [Rule 15(c)(3)] notice of the action." Id. at 320.

In Keitt, 1994 WL 385333, the district court found that police officers employed by Amtrak did not have a sufficient

identity of interest with Amtrak for 15(c)(3) imputed notice purposes. The court stated that "[n]on-management employees, such as the officers herein, do not bear a sufficient nexus with their employer to permit a conclusion that they share an identity of interest in the litigation so as to permit the presumption that they received notice that they would be sued simply because their employer had timely notice." Id. at *6 (citing Perri v. Daggy, 776 F. Supp. 1345 (N.D. Ind. 1991)).

These cases demonstrate that this issue is a close one in this case. We believe, however, that Regan does not share sufficient identity of interest with SCI-Rockview so that notice given to SCI-Rockview can be imputed to Regan for Rule 15(c)(3) purposes. Regan was a staff level employee at SCI-Rockview with no administrative or supervisory duties at the prison. Thus, Regan's position at SCI-Rockview cannot alone serve as a basis for finding an identity of interest, because Regan was clearly not highly enough placed in the prison hierarchy for us to conclude that his interests as an employee are identical to the prison's interests. That is, Regan and SCI-Rockview are not"so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." 6A Wright et al., supra, S 1499, at 146.

Furthermore, the circumstances present in Ayala Serrano and Jacobsen that were the bases for the findings of identity of interest in those cases are not present in this case. In Ayala Serrano, the prison guard's continued close contact with the plaintiff led the court to conclude that the guard likely had notice of the instigation of the lawsuit. Here, Regan did not have such continuing contact with the plaintiff, so there is no similar basis for concluding that he would have received such notice. In Jacobsen, the key fact for the court was that the same City Attorney would likely have interviewed the newly named defendants soon after the lawsuit was filed, thus giving these defendants sufficient notice of the lawsuit within the relevant 120 day period. As we noted in the previous section, however, this case was originally filed in the Eastern District of Pennsylvania with a different attorney representing the

19

defendants, and it was only after the case was transferred to the Middle District that attorney Neuhauser began his representation of the defendants and investigation of the case--well after the 120 day period had expired. Because there is no evidence or any reason to believe that the previous attorney for the defendants represented or even contacted Regan, the basis for finding sufficient notice that existed in Jacobsen is not present here.

Thus, we find ourselves in agreement with Keitt that, absent other circumstances that permit the inference that notice was actually received, a non-management employee like Regan does not share a sufficient nexus of interests with his or her employer so that notice given to the employer can be imputed to the employee for Rule 15(c)(3) purposes. For this reason, we reject the plaintiff 's identity of interest argument, and conclude that the District Court did not err in denying the plaintiff leave to amend her complaint to add Regan as a defendant.

C. But for a Mistake Concerning the Identity of the Proper Party

Rule 15(c)(3)(B) provides a further requirement for relating back an amended complaint that adds or changes a party: the newly added party knew or should have known that "but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed. R. Civ. P. 15(c)(3)(B). The plaintiff argues that this condition is met in her proposed amended complaint, but the District Court found otherwise. The defendants also contend that (1) the plaintiff did not make a mistake as to Regan's identity, and (2) Regan did not know, nor should he have known, that the action would have been brought against him had his identity been known, because the original complaint named "Unknown Corrections Officers" and Regan is not a corrections officer but a staff psychologist.

The issue whether the requirements of Rule 15(c)(3)(B) are met in this case is a close one. We begin by noting that the bulk of authority from other Courts of Appeals takes the position that the amendment of a "John Doe" complaint

20

--i.e., the substituting of real names for "John Does" or "Unknown Persons" named in an original complaint--does not meet the "but for a mistake" requirement in 15(c)(3)(B), because not knowing the identity of a defendant is not a mistake concerning the defendant's identity. See Wilson v. United States, 23 F.3d 559, 563 (1st Cir. 1994); Barrow v. Wethersfield Police Dept., 66 F.3d 466, 469 (2d Cir. 1995), amended by 74 F.3d 1366 (2d Cir. 1996); W. Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1201 (4th Cir. 1989); Jacobsen v. Osborne, 133 F.3d 315, 320 (5th Cir. 1998); Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996); Worthington v. Wilson, 8 F.3d 1253, 1256 (7th Cir. 1993); Powers v. Graff, 148 F.3d 1223, 1226-27 (11th Cir. 1998). This is, of course, a plausible theory, but in terms of both epistemology and semantics is subject to challenge.

In Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 175 (3d Cir. 1977), this Court appeared to have reached the opposite conclusion insofar as we held that the amendment of a "John Doe" complaint met all of the conditions for Rule 15(c)(3) relation back, including the "but for a mistake" requirement. In Varlack, the plaintiff had filed a complaint against, inter alia, an "unknown employee" of a branch of the Orange Julius restaurant chain, alleging that this employee had hit him with a two-by-four in a fight, which caused him to fall through a plate glass window, injuring his arm so severely that it had to be amputated. After the statute of limitations had run, the plaintiff sought to amend his complaint to change "unknown employee" to the employee's real name, using Rule 15(c)(3) to have the amended complaint relate back to the original. The newly named defendant testified that he had coincidentally seen a copy of the complaint naming both Orange Julius and an "unknown employee" as defendants, and that he had known at that time that he was the "unknown employee" referred to. This Court affirmed the district court's grant of the 15(c)(3) motion, holding that the plaintiff met all the requirements of 15(c)(3), including the requirement that the newly named defendant "knew or should have known but for a mistake concerning the identity of the proper party." See id. at 175.

We are, of course, bound by Varlack insofar as it held

21

that the plaintiff 's lack of knowledge of a particular defendant's identity can be a mistake under Rule 15(c)(3)(B). See Internal Operating Procedures of the United States Court of Appeals for the Third Circuit 9.1 (2000).4 Moreover, as is also noted above, every other Court of Appeals that has considered this issue (specifically, the First, Second, Fourth, Fifth, Sixth, Seventh, and Eleventh Circuits) has come out contrary to Varlack; generally speaking, the analysis in these other cases centers on the linguistic argument that a lack of knowledge of a defendant's identity is not a "mistake" concerning that identity. However, even assuming that Varlack allows for amended "John Doe" complaints to meet Rule 15(c)(3)(B)'s "mistake" requirement, it is questionable whether the other parts of 15(c)(3)(B) are met in this case, namely, whether Regan knew or should have known that he would have been named in the complaint if his identity were known. Because the original complaint named "Unknown Corrections Officers," it is surely arguable that psychologist Regan would have no way of knowing that the plaintiff meant to name him.

These are sticky issues. Because, as we explained above, the plaintiff 's argument on the applicability of Rule 15(c)(3) to her case fails on notice grounds, we do not need to

_____

4. We note, however, that two district court cases from within this Circuit have seemingly concluded that Varlack 's holding does not entail that amended "John Doe" complaints meet Rule 15(c)(3)(B)'s "mistake" requirement, as these cases have followed the rule of the other Circuits in denying the relation back of amended complaints that replace "John Doe" defendants because there was no mistake involved in the original complaints. See Gallas v. The Supreme Court of Pennsylvania, 1998 WL 599249, at *4 (E.D. Pa. Aug. 24, 1998); Frazier v. City of Philadelphia, 927 F. Supp. 881, 885 (E.D. Pa. 1996). The majority of district court cases from within this Circuit that have considered this issue, however, have followed the broader interpretation of Varlack and thus allowed the relation back of amended "John Doe" complaints under Rule 15(c)(3). See, e.g., Trant v. Towamencin Township, 1999 WL 317032 at *5–*6 (E.D. Pa. 1999); Trautman v. Lagalski, 28 F. Supp. 2d 327, 330 (W.D. Pa. 1998); Cruz v. City of Camden, 898 F. Supp. 1100, 1110 n.9 (D.N.J. 1995); Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc., 801 F. Supp. 1450, 1457 (E.D. Pa. 1992). We think this to be the better reading of Varlack.

22

decide these questions here. We do, however, take this opportunity to express in the margin our concern over the state of the law on Rule 15(c)(3) (in particular the other Circuits' interpretation of the "mistake" requirement) and to recommend to the Advisory Rules Committee a modification of Rule 15(c)(3) to bring the Rule into accord with the weight of the commentary about it.5

_____

5. As we note in the text, some Courts of Appeals have held that proposed amended complaints that seek to replace a"John Doe" or other placeholder name in an original complaint with a defendant's real name do not meet Rule 15(c)(3)(B)'s "but for a mistake" requirement. We find this conclusion to be highly problematic. It is certainly not uncommon for victims of civil rights violations (e.g., an assault by police officers or
prison guards) to be unaware of the identity of the person or persons who violated those rights. This information is in the possession of the defendants, and many plaintiffs cannot obtain this information until they have had a chance to undergo extensive discovery following institution of a civil action. If such plaintiffs are not allowed to relate back their amended "John Doe" complaints, then the statute of limitations period for these plaintiffs is effectively substantially shorter than it is for other
plaintiffs who bring the exact same claim but who know the names of their assailants; the former group of plaintiffs would have to bring their lawsuits well before the end of the limitations period, immediately begin discovery, and hope that they can determine the assailants' names before the statute of limitations expires. There seems to be no good reason to disadvantage plaintiffs in this way simply because, for example, they were not able to see the name tag of the offending state actor.

The rejoinder to this argument is that allowing the relation back of amended "John Doe" complaints risks unfairness to defendants, who, under the countervailing Varlack interpretation of Rule 15(c)(3)(B), may have a lawsuit sprung upon them well after the statute of limitations period has run. But fairness to the defendants is accommodated in the other requirements of Rule 15(c)(3), namely the requirements that (1) the newly named defendants had received "such notice of the institution of the action" during the relevant time period "that the party will not be prejudiced in maintaining a defense on the merits"; and (2) the newly named defendants knew or should have known that the original complaint was really directed towards them ("the action would have been brought against the party"). These requirements generally take care of the "springing a claim on an unsuspecting defendant" problem. Because these other Rule 15(c)(3) requirements must be met before an amended complaint can relate back, the "mistake" requirement of 15(c)(3), as interpreted by the other Circuits, would be dispositive in disallowing

23

III. Conclusion

For the above reasons, the District Court's grant of
summary judgment for the defendants and the court's

_____

relation back only when the to-be-added defendants had timely notice of
the lawsuit and knew that the lawsuit was really meant to be directed at
them. We do not think that fairness requires that a plaintiff be barred
from adding newly named parties as defendants when these newly
named parties (1) knew about the lawsuit within the relevant time
period, (2) knew they were the ones targeted, and (3) had the information
as to their correct names but withheld that information from the plaintiff
--indeed, we believe that fairness requires that a plaintiff in such a
situation should be allowed to add the newly named defendants to his
complaint.

We also note that Rule 15(c)(3)(B)'s mistake requirement has been held
to be met (and thus relation back clearly permitted) for an amended
complaint that adds or substitutes a party when a plaintiff makes a
mistake by suing the state but not individual officers in a S 1983 action.
See Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1192 n.13 (3d
Cir. 1994) (Becker, J., concurring in part and dissenting in part)
(listing
cases in which plaintiffs have been permitted to have their complaints
relate back when they made mistakes in the naming of defendants in
their complaints, including naming states and state agencies instead of
state officials in S 1983 cases). We think that it makes no sense to allow
plaintiffs who commit such a clear pleading error to have their claims
relate back, while disallowing such an option for plaintiffs who, usually
through no fault of their own, do not know the names of the individuals
who violated their rights. This disparity of treatment of S 1983
plaintiffs
seems to have no principled basis and should not be codified in our
Rules of Civil Procedure.

All of the commentators who address this issue (at least those that we
found in our research) call for Rule 15(c)(3) to allow relation back in
cases in which a "John Doe" complaint is amended to substitute real
defendants' names. See Edward H. Cooper, Rule 15(c)(3) Puzzles at 3-5
(November 1999) (unpublished manuscript, on file with the
Administrative Office of the United States Courts, Rules Committee
Support Office); Carol M. Rice, Meet John Doe: It is Time for Federal
Civil
Procedure to Recognize John Doe Parties, 57 U. Pitt. L. Rev. 883, 952-53
(1996); Steven S. Sparling, Note, Relation Back of "John Doe" Complaints
in Federal Courts: What You Don't Know Can Hurt You , 19 Cardozo L.
Rev. 1235 (1997) (arguing that the structure, purpose, history and
development of Rule 15(c) all cut in favor of allowing relation back of
amended John Doe complaints).

order denying the plaintiff's motion to amend her complaint will be affirmed. The Clerk is directed to send copies of this opinion to the Chairman and Reporter of the Judicial Conference Advisory Committee on Civil Rules and the Standing Committee on Practice and Procedure, calling attention to footnote 5.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit
_____

In his manuscript "Rule 15(c)(3) Puzzles," Professor Edward H. Cooper of the University of Michigan Law School suggests the following alteration (in italics) in subsection 15(c)(3)(B) of the Rule in order to make it clear that the relation back of "John Doe" amended complaints is allowed: "the party to be brought in by amendment . . . knew or should have known that, but for a mistake or lack of information concerning the identity of the proper party . . . ." Cooper, supra, (manuscript at 8). We believe that a change in Rule 15(c)(3) along the lines advocated by Professor Cooper would fix the lack of fairness to plaintiffs with "John Doe" complaints that currently inheres in the other Circuits' interpretation of the Rule, and would bring the Rule more clearly into alignment with the liberal pleading practice policy of the Federal Rules of Civil Procedure.

For these reasons, we encourage the Rules Advisory Committee to amend Rule 15(c)(3) so that it clearly embraces the Cooper approach to the relation back of "John Doe" complaints. As the Supreme Court has said, "the requirements of the rules of procedure should be liberally construed and . . . `mere technicalities' should not stand in the way of consideration of a case on its merits." Torres v. Oakland Scavenger Co., 487 U.S. 312, 316 (1988). Rule 15(c)(3) is clearly meant to further the policy of considering claims on their merits rather than dismissing them on technicalities, and this policy is substantially furthered by the Cooper
approach to Rule 15(c)(3)(B).

25